Aubuchon et al. v. Bender et al.

44 560
99 343
44 560
37a 412
44 560
42a 183
44 560
104 258
44 560
45a 109
44 560
112 510
44 560
125 403
44 560
157 271
44 560
93a 281

PAUL AUBUCHON et al., Appellants, v. CHARLES C. BENDER et al., Respondents.

1. *Conveyances — Notice — Prior unrecorded deed — Consideration.* — To entitle a grantee of land, without notice, to protection against a prior unreserved conveyance, he must have parted with something of value as a consideration of the deed.

2. *Conveyances — Consideration — Record — Relinquishment of dower.* — The grantee, without notice, in a duly recorded deed, the sole consideration for which was the love and affection of the grantor, will not hold as against a prior unrecorded deed of the same property, the consideration of which was love and affection, and also the relinquishment of dower by the wife of the grantor.

3. *Conveyances — Life estate — Remainder — Revocation — New uses.* — The grantor of land seized to his own use for life, can do nothing, while in possession, to impair an estate created by him in remainder, and, not having reserved the power, can neither revoke the estate in remainder nor declare new uses.

4. *Conveyances — Covenant — Contingent and vested remainders created by one deed.* — A covenant that creates both a vested and contingent remainder is unusual, but there seems to be no principle of law to prevent it.

5. *Conveyances — Covenant to stand seized to uses — Vested and contingent remainders.* — By the terms of a deed the grantor was to stand seized of certain property to his own use during his life; and, after his death, his title was to vest in five children in the deed mentioned, "and such other children in lawful wedlock by him begotten, as should be living at the time of his death." After making said deed, the grantor re-married. *Held,* that the children named in the deed had a vested, and those born of the subsequent marriage a contingent, remainder in the property.

6. *Conveyances — Contingent remainders — Child en ventre sa mere.* — A child unborn will now not only inherit all manner of estates, but take remainders, whether vested or contingent, as though living when the particular estate determined. The statute of 10 and 11, William III, ch. 16, adopted in this State in the revision of 1845 (p. 220, § 9), was but an affirmance of what had already become the law.

7. *Practice, Civil — Actions — Parties — Question who are, not settled by agreement of counsel.* — The question who are the heirs of a party to a suit can not be set at rest by a statement of facts agreed upon by counsel in the case.

*Appeal from St. Louis Circuit Court.*

*Harding & Crane,* for appellants.

I. Covenant to stand seized is one of the forms of conveyance upon which the statute of uses operates. (Burton, 21 Law Lib. 19, § 136; 4 Kent Com. 492.) The deed of April 23, 1844, is a covenant to stand seized. (Roe v. Tranmarr, Willes, 682.)

II. Both the deeds are voluntary conveyances, neither of them being to *bona fide* purchasers for a valuable consideration. The registry act, therefore, does not apply. (4 Kent, 456; Doe v. James, 16 East. 212, new ed. 406; Paul v. Fulton, 25 Mo. 157, 163; Strickland v. McCormick, 14 Mo. 166.) The statute applies only to purchasers and mortgagers. (Rev. Stat. 1835, p. 123, § 31; 4 Kent, 295; 2 Blackst. Com. 335.)

III. The five children who are named in the deed took vested remainders. (2 Sanders' Uses and Trusts, 34, and notes; 4 Kent, 202, 205, and note *c;* Right v. Cuba, 4 B. & C. 866; 2 Washb. 512, § 20; 2 *id.* 229, 230, note 2.)

IV. The quantity of the estate vested in the five children named in the deed was liable to diminution by the subsequent birth of other children of the grantor by Cecile Clement, and not otherwise.

V. The two children of the second *ventre* who died in the lifetime of the grantor, take nothing, because there were children of the class living at the time of the grantor's death. (2 Turner, C. R. 334 *et seq.;* Harrison v. Forman, 5 Ves. 307; Sturges v. Pearson, 4 Mad. 412.)

VI. The child of the second marriage (Virginia), who was born after the death of the grantor, is not entitled, because she was not *in esse* when the particular state determined. (2 Blackst. Com. 169; Butler's Notes to Coke Lit. 298; 1 Turner, C. R. 308; Hill. on Trustees, Wharton, 267, 377,)

*Gardiner*, and *Garesche & Mead*, for respondents.

I. The interest of the children was not vested, but contingent — dependent on their survivorship of the father. (Hempstead v. Jackson, 20 Ala. 193.)

II. Virginia Dantin, though a posthumous child, certainly inherited. (1 Blackst. Com. § 130; 2 Kent's Com. § 424; 4 Kent's Com. 248, 412.)

BLISS, Judge, delivered the opinion of the court.

This is an action of ejectment, which was originally brought in the Land Court, but transferred to the Circuit Court, to recover

possession of lot six, in block one, in H. G. Soulard's addition to the city of St. Louis. The wife of Paul Aubuchon, formerly the wife of Adolph Dantin, and the other plaintiffs, children of said Adolph by said wife, claim to hold the property by virtue of a covenant to stand seized to uses executed by said Adolph and wife, then Cecile Dantin (named in the deed as Cecile Clement), April 23, 1844. It appears that about the time of the execution of this deed, the said Adolph commenced proceedings against Cecile for a divorce, which he afterward obtained, and that the original defendant, Amanda Dantin, was the second wife of said Adolph, and held under a subsequent deed, and also as devisee; but she died pending the suit, and it was revived against Bender, as her executor, and her four minor children. The plaintiffs recovered judgment in the Circuit Court for an interest in the lot in common with the defendants, and for damages and monthly rents, from which both parties appealed, and almost the only questions raised by the record pertain to the validity of the deed, to its construction, and its legal effect.

The deed, after reciting the seizin in fee of said Adolph in two parcels of land, to-wit: First, in a lot in the town of St. Ferdinand, describing it; and, second, in the lot in controversy, describing it, proceeds as follows: "Now, therefore, the said Adolph Dantin, being free from debt, desires to make provision for his wife and children by limiting the real estate aforesaid to certain uses and trusts, in consideration whereof he declares and says he is lawfully married to Cecile Clement, his present wife, by whom he has five children now living, to-wit: Adolph, Francois, Cecile, Therese, and Louise, the oldest of said children, Cecile, being about twelve years of age. And in further consideration of the premises the said Adolph doth grant, agree, declare, and say, that from henceforward he will be and stand seized in fee simple of the lot of ground first above described, and the buildings thereon situated, to the sole and separate use, benefit, and usufruct of his wife, the said Cecile Clement, during her natural life, and after her death for the use, benefit and usufruct of the five children of said Cecile above named, and their heirs, and none others, so that during the lifetime and after the death

of said Cecile, her said children above named may enjoy, use and dispose of the rents, issues and profits of the said lot of ground and the improvements thereon, freely and without molestation or control of the said Adolph or any other person whomsoever, she, the said Cecile Clement, paying all taxes, rates, charges, and assessments on said lot of ground and improvements during her lifetime, but having no power to sell, mortgage, or in any wise encumber the same. And for the same consideration, the said Adolph does grant, agree, declare, and say, that from henceforth he will be and stand seized in fee simple of the lot of ground secondly above described, with the appurtenances, for his own use during his natural life, and after his death the use, benefit, usufruct and title to the same shall revert to and vest in his said five children above named, and such other children in lawful wedlock by him begotten as shall be living at the time of his death, and their heirs, without the power on the part of said Adoph to sell, alienate, in any wise encumber, or dispose of said lot of ground and appurtenances, for a period longer than his natural life. And in order to avoid any conflict or litigation growing out of this [writing illegible], Cecile, wife of said Adolph, assents hereto and relinquishes her dower in the said lot of ground secondly herein described, and joins in the execution of this deed." The deed was duly executed April 18, 1844, and was not acknowledged but witnessed by two witnesses, and by them proved under the statute, September 30, 1846, and was recorded December 19, 1859.

Adolph Dautin obtained his divorce in May, 1844, and, four or five years after, married Amanda, by whom were born his other children, survivors of whom are defendants. In July, 1857, he deeded to one Castello the north half of the premises in controversy, in trust for his said wife Amanda during her life, remainder to their joint issue, which deed was immediately acknowledged and recorded. In 1853 the said Adolph made his will, by which he gives everything to his wife Amanda during her life and widowhood, remainder to her children by him, except a life-interest to his divorced wife in another parcel of land; and Amanda Dantin makes her will, giving everything to her children.

Adolph Dantin died in December, 1859, and this suit was commenced the next year.

The right of the plaintiffs to anything depends, in the first instance, upon the validity of the covenant to stand seized, executed by Adolph and Cecile Dantin; for, if that deed fails, their right is cut off by the deed in trust to Castello, and the will. This first instrument is attacked upon the ground that it was not put on record until 1859, about the time of, perhaps a little after, the death of the covenantor. No evidence was offered tending to prove any fraud or deception in procuring it; but it seems to have been a deliberate settlement by and between the parties as to the two lots mentioned, giving one to the wife during her life, remainder to their children, and the other to the husband during his life, remainder to his children. The fact that he obtained a divorce in a short time, swearing to his charges against her on the very day of executing the instrument, and the fact that she made no opposition to his application, show that this division of the property and settlement upon children was made in view of their probable separation. We have only then to consider its validity as affected by being withheld from record.

At common law there was no obligation to put upon record a conveyance affecting the title of land. But the duty of registration is now imposed upon the grantee, or the person to whom, or for whose use, the conveyance or covenant is made; and, as in all other cases where a duty is imposed, he who neglects it should suffer the consequences. The object of the requirement is to compel an exhibit of titles to facilitate transfers, but principally to guard purchasers against imposition; and hence, if the prior deed is not recorded, a subsequent buyer, for good consideration, without notice, will be protected. This protection, always thrown around an innocent purchaser, and to which our statute also expressly entitles him, is founded on the broadest equity. He receives it not because the prior deed is invalid in itself — the duty of recording it is not enforced by any such penalty — but because justice will not suffer a person who omits a plain duty to set up a claim against one who has been led by that omission to invest his money in what he supposed his vendor had a right to

sell.   But, to entitle him to such protection, he must have parted with something of value, otherwise he is not injured; and such is the spirit, if not the letter, of the statute, and such has been its uniform interpretation.   In Davis v. Ownby, 14 Mo., on page 176, the judge says: "There must be title for value under the grantor, to admit the question [want of record] being raised;" and in McCamant v. Patterson, 39 Mo., on page 110, almost the same language is used.   The covenant to stand seized, of 1844, operated as a deed of gift of the remainder of the estate in controversy to the children of the covenantor.   The trust deed to Castello, in 1857, would have operated as a gift of another remainder, founded upon a different estate, to a part of his children.   In addition to the laudable desire to make provision for his children, moving the execution of both the instruments, there is to the first the additional consideration of release of dower by his then wife, Cecile, for the benefit of his children, while to the second there is no other consideration.   The beneficiaries of the second instrument, holding by gift merely, are in no better condition than would be an heir or devisee, and stand in the shoes of their grantor, and the instrument under which they claim could have no other effect than to assign his life estate.   Still less could the devisees of the will, either of Adolph Dantin or of Amanda, his wife, avail themselves of this want of registration.

To the suggestions of defendants' counsel in relation to presumptions and limitations arising from the adverse possession of the covenantor, Adolph Dantin, it is only necessary to say that he never held adverse possession, but was possessed according to the terms of the covenant upon which this suit is based, being seized to his own use for life.   While so in, he could do nothing to impair the estate in remainder; and, not having reserved the power, he could neither revoke nor declare new uses.   (2 Blackst. Com. 335.)

There is no defect charged upon the covenant itself, of 1844, and holding it not to be invalid for want of registration, nor from the subsequent acts of the covenantor, we have only to consider its legal effect; and the first question is whether the remainder is vested or contingent, as it becomes important in determining

the rights and quantity of estate held by the different claimants. The particular estate that supports the remainder is that of the covenantor, Adolph Dantin, which is a life estate, and if the persons who are to enter at his death, are fixed and determined, then the remainder is vested in them, as much so as would have been the fee if the grant were to them without the intervention of the particular estate. Does the instrument ascertain and declare who are the remainder-men? To answer this question we must find the intention of the covenantor as evidenced by his deed. Firstly, he declares that he desires to make provision for his wife and children; and as to the first piece of property, there can be no doubt that the remainder is vested, and became at once the absolute property of the children named in the covenant.

But the disposition in this respect of the second lot, and which is the one in dispute, is not so clear. Had the provision been that the use, etc., should "revert and vest in said five children above named, and such other children as shall in lawful wedlock be by him begotten," leaving out the words of qualification following, "as shall be living at the time of his death," the intention would be plain to place all born and to be born upon the same footing, and the remainder would vest at once in the living children and open up to receive any that might be born, and vest in them as soon as born. (4 Kent, 205.) Or had the language been, "shall revert and vest in such of his said five children above named, and such other children in lawful wedlock by him begotten, as shall be living at the time of his death," the remainder would be contingent as to all the persons, and could not vest until his death had determined in whom it should vest. (2 Blackst. Com. 170.) But if we follow the plain language of the deed, the remainder seems to be both vested and contingent— vested as to the children of the covenantor then living, and contingent as to those who were to come after.

A covenant that creates both a vested and contingent remainder in the same property in doubtless unusual, but I know of no principle of law to prevent it. No practical inconvenience can follow; for when the remainder-men take possession the contingency is gone, and the whole remainder becomes vested. Nor is

it more unreasonable in theory than for a contingency to become a vested interest by the birth of the only remainder-man—as in a gift to A. for life, remainder to the eldest son of B., who has no son—or the opening of a vested remainder and reinvesting it at the birth of each additional remainder-man. The whole estate is purely ideal until the right of possession follows the determination of the particular estate, and it is only important to determine the question in the case at bar in reference to the rights of the heirs of the children of the covenantor.

The record shows that Francois, one of the children named in the deed as then living, died in 1845, and as his interest in the remainder vested at the date of the deed, it goes to his heirs. It also shows that Amanda, second wife of the covenantor, bore him six children, of whom four were living at his death. The interest of these children, not being vested, but contingent upon birth and survivorship, that of the two who died never attached, and consequently did not go to their heirs, hence these four children take by virtue of the covenant the proportion of four to five, or four-ninths of the property. But they take a small interest in addition. Francois, as we have seen, died in 1845, and left as his heirs his father and mother and four brothers and sisters. Thus one-sixth of his interest in the remainder coming to the father, was by him, through his deed to Castello, and his will, conveyed to the children of Amanda; so, in addition to the four-ninths, these four children jointly are entitled to one-sixth of one-fifth of five-ninths, or one fifty-fourth, leaving also for the plaintiff, Mrs. Aubuchon, one fifty-fourth as heir of Francois, and to her four surviving children, jointly, four-ninths in their own right, and four fifty-fourths as heirs of Francois.

The plaintiffs object to this distribution upon various grounds. First, they claim that the estate which vested in the five living children of the covenantor, by his deed, was subject to diminution only by the subsequent birth of children by Cecile Clement, and not by the birth of children from any subsequent marriage. But I can see no warrant, either in reason or authority, for this claim. Our only guide in the matter is the intention of the covenantor, and that seems plain. It is urged that the expressed object " to

make provision for his wife and children" controls the words of
the covenant. The object of an instrument is always to be con-
sidered, especially if there be any doubt as to its construction.
But there can be no reasonable doubt in the present case, and if
there were, the construction given it abundantly secures the object.
Two parcels of real estate were embraced; a life estate in one
was given to his wife, remainder to his living children by her.
In the other the life estate was invested in him, with a remainder
to these same children, and "such others to be by him begotten
as shall be living at the time of his death." The wife and living
children are abundantly provided for according to the specified
object, and a contingent interest reserved in one of the lots for
any possible future children, is in no way inconsistent with that
provision.

Secondly, it appears that one of the children of Amanda
Dantin, was born after the death of her husband, and plaintiffs
also claim that he has no interest in the remainder, as he was not
living at the time of his father's death. In the days when
subtleties of statement were suffered to control rights of property
and inheritance, it was held that a posthumous child, not being
*in esse*, could not take a contingent remainder, unless an inter-
mediate estate was provided upon which it could rest. But the
practical sense of modern jurisprudence has so sifted that vast
pile of wisdom and rubbish, comprising the common law of
tenures, that justice and reason are no longer the slaves of tech-
nical consistency. A child unborn will now not only inherit all
manner of estates, but take remainders, whether vested or con-
tingent, as though living when the particular estate determined;
and it matters not whether, in the technical statement of the case,
we say that the estate was suspended until his birth, or that it
vested *en ventre sa mere*, or vested in the person next entitled
to it, and divested and reinvested at his birth, it is settled by
adjudication as well as legislation that the remainder-man shall
not be deprived of his estate, although born after the determina-
tion of the particular estate.

The plaintiffs claim that this view is only sustained by the
statute of 10 and 11, William III, ch. 16, which statute was not

adopted in Missouri, until the revision of 1845 (page 220, § 9), which was after the execution of the covenant under which the plaintiffs claim. But this statute when adopted by us was but an affirmance of what had already become the law. The history of its original adoption shows one the struggles for which our jurisprudence has been distinguished. The King's Bench, in Reeve v. Long, 1 Salk. 227, held, as the law was then understood, that a contingent remainder must vest during the particular estate, or *eo instanti* that it determines, and consequently that upon a devise to H. L. for life, remainder to his first son, in tail, etc., and in default to R. L., etc., if H. L. should die, leaving his wife *enciente* with a son, R. L. might enter and hold to the exclusion of the posthumous son. The case went to the House of Lords where, under the lead, as Lord Roselin informs us, of the learned Somers, the judgment was reversed, to the great dissatisfaction of the common-law judges. (Reeve v. Long, 2 Levinz, 408.) The statute of William III, was soon after enacted, to settle, as is said, the question, but really it would seem to extend to grants and covenants the principle of the decision which had been made in reference to devisees; for the courts now hold the posthumous child entitled to his remainder, whether created by will or deed. (See notes to 2 Sharswood's Blackstone, 169, and cases and authorities there cited.) The principle is broadly and clearly stated by Chancellor Walworth in Marcellis v. Thalhimer, 2 Paige, 39, 40. The court there says: "It is at this day a well settled rule of law relative to successions, and to most other cases in relation to infants, that a child *en ventre sa mere*, as to every purpose where it is for the benefit of the child, is to be considered *in esse*." "It was for some time doubted whether such a child could take a contingent remainder before its birth. The question was finally settled," etc., citing Reeve v. Long. "It is now settled both in England and here that the infant, after conception, but before its birth, is *in esse*, for the purpose of taking the remainder or any other estate or interest which is for the benefit of the infant."

It is seen that Francois, son of Cecile, died early, and the plaintiffs' counsel object to considering his father as one of his

heirs, because in the agreed statement of facts, it is admitted that the plaintiffs are his heirs. No agreed statement of facts can fix a conclusion of law. The relationship and death are facts to be admitted, but who were his heirs is a question of law which the court is bound to declare. Hence, notwithstanding the inadvertant concession of defendants' counsel, the father was one of his heirs, and his interest as such should pass as before indicated.

The only remaining question is that of rents and damages, to the payment of which the infants, it is claimed, are not liable. The amount of damages and monthly rents for which the defendants are liable depends upon the proportion of their estate, and should be divided as follows: the executor should pay out of the estate of Amanda Dantin all that had accrued at her death. Since her death, her heirs defending are supposed to be in possession and should be responsible for the proportion of the plaintiffs' interest in the possession. This is the principle upon which the judgment for damages was rendered below, although I find the proportion of the plaintiffs' interest adjudged to them in the lot a little too large.

The judgment is therefore reversed and the cause remanded for judgment according to the principles of this opinion. The other judges concur.