**SPACEWALKER, INC., Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
et al., Appellants.

No. 70499.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Aug. 12, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 1997.

Application to Transfer Denied
Nov. 25, 1997.

John H. Quinn, III, Thomas B. Weaver, Armstrong, Teasdale, Schlafly & Davis, St. Louis, Ronald Willenbrock, Amelung, Wulff & Willenbrock, St. Louis, Sharon Wilkes, Homire & Wilkes, St. Louis, for appellants.

Clinton B. Roberts, Tom R. Burcham, III, Roberts & Roberts, Farmington, for respondent.

GERALD M. SMITH, Presiding Judge.

Insurance Company of North America (INA) appeals from a default judgment entered against it as a result of sanctions imposed because of alleged failure to make discovery. The court awarded compensatory damages of $550,000 and punitive damages of the same amount. We reverse and remand.

Plaintiff, Spacewalker, Inc., originally brought this action against defendants American Family Mutual Insurance Company, Cigna Insurance Company, and Joe Mahler. As to Cigna, it alleged that Cigna incorrectly classified Spacewalker's business which resulted in higher premiums and eventually to cancellation of plaintiff's workers' compensation insurance. Plaintiff also claimed it was unable to obtain workers' compensation insurance due to Cigna's negligence and sought "such sums as will reasonable (sic) compensate plaintiff for its damages incurred and damage to be incurred in the future" and punitive damages of $1,000,000. The punitive damage request was premised on allegations that Cigna acted intentionally, unlawfully and maliciously with intent to deprive plaintiff of insurance coverage or to obtain excessive premiums from plaintiff. The petition contained no allegation of lost profits.

Initially Cigna did not file an answer and a default was entered in the amount of $51,-276.42 compensatory damages and $500,000 punitive damages. The compensatory damage award was premised on the affidavit of plaintiff's president that the company had incurred actual damages of the amount awarded. Cigna filed a motion pursuant to Rule 74.05(c) to set aside the default. In its motion Cigna stated on information and belief that plaintiff obtained its workers' compensation through the Missouri assigned risk pool, that Cigna did not provide workers' compensation insurance through the pool, was not a member of the pool, and did not at any time provide workers' compensation insurance to the plaintiff. It further alleged that an application would have been filed by plaintiff with the pool, that the rates and classification of risk are determined by the National Council for Compensation Insurance (NCCI) and that the assigned carrier would not have the authority unilaterally to change a rate or classification. It further alleged that the application of plaintiff was assigned to INA. Cigna and INA were represented by the same counsel and are related although separate entities. Judge Pennoyer, to whom the motion to set aside the default was assigned, granted Cigna's motion and set aside the default.

Plaintiff then filed an amended petition on July 29, 1992, joining INA as a defendant. Count I, directed to INA alleged that INA: breached its contract with plaintiff by improperly classifying plaintiff's business; billed plaintiff at a higher rate; improperly canceled plaintiff's workers' compensation insurance; and placed an improper lien for premiums thereby interfering with plaintiff's right to obtain insurance from other carriers. In Count II directed to Cigna and INA it alleged that those defendants "have so intertwined their conduct here that Plaintiff cannot separate and distinguish whether the acts herein complained of were the acts of Defendant INA or Cigna." It alleged the

two companies are associated with each other and Cigna appears to act on behalf of defendant INA and did in this case act as agent for defendant INA. It then charged the defendants with negligence and that their actions were intentional, unlawful and malicious with the intent to deprive plaintiff of insurance coverage or to obtain excessive premiums. In Count V plaintiff alleged tortious interference against Cigna and INA. The amended petition contained no allegation of lost profits.

On December 29, 1992, the court "overruled" defendants'[1] motion to dismiss. On January 5, 1993, plaintiff filed a notice and certificate of readiness for trial. It was signed by counsel for plaintiff and advised that on February 19, counsel would request a trial setting. The notice certified the case was at issue and stated " Discovery is complete". On January 12, defendants filed their answer, which was basically a general denial.

On February 2, 1993, plaintiff filed notices for two depositions. On April 19, it filed its requests for production of documents directed to defendants. Judge Murphy disqualified himself and the case was assigned to Judge Pratte and the July trial setting was vacated and the case reset for November. In June, plaintiff acknowledged the production by defendants of 71 requested documents.

Prior to the June acknowledgment, on May 20, plaintiff filed its first set of interrogatories to defendant Cigna, which filed objections thereto. Some of the objections were overruled, and CIGNA filed its answers. In answer to whether Cigna was a corporation Cigna stated: "CIGNA is not a corporate entity. 'CIGNA' is a servicemark which has been registered with the U.S. Patent and Trademark Office and with other government agencies." Interrogatory 10 asked if Cigna has had "any other claims or lawsuits within the past then (sic) years that allege defendant Cigna improperly canceled a Worker's Compensation policy." That interrogatory was objected to but no ruling was made on the objection. It was not answered. Interrogatory 12 inquired whether the defendant has had any other claim or law suits

within the past ten years that allege defendant Cigna was claiming a disputed balance due on insurance premiums, and therefore, prevented a business or businesses from securing insurance through the assigned risk pool. Objection to that interrogatory was overruled and Cigna answered in the negative. Interrogatory 13 asked for the particulars if 12 was answered in the affirmative. No answer was therefore required. Plaintiff filed a second set of interrogatories directed to Cigna. In answer to an interrogatory concerning the exact legal and corporate relationship between Cigna and INA, Cigna responded: " 'CIGNA' is not a corporate entity; 'CIGNA' is a service-mark which has been registered with the U.S. Patent and Trademark office and with other government agencies. Pursuant to a licensing agreement the CIGNA Companies including INA are licensed to use the servicemark."

The trial court heard the objections to the first set of interrogatories on October 22, 1993, and ordered answer by November 1. Trial was set for November 7 and 8. On November 4, plaintiff sought sanctions for Cigna's failure to answer interrogatories contending it could not prepare for trial. The court granted monetary sanctions against Cigna and INA, and removed the case from the November docket setting. Continued attempts at discovery and requests for sanctions ensued. On December 2, 1994, plaintiff filed another certification for trial again stating that discovery was complete. The court scheduled trial for July 10, 1995.

On May 3, 1995, plaintiff filed its fifth set of interrogatories directed to INA. Question 1 asked: "State whether Defendant INA has had any other claims, complaints or law suits within the past ten years alleging or claiming that Defendant overcharged a business for worker's compensation insurance or coverage." Question two sought, if question one was answered in the affirmative, the nature of the claims or suits and dates, names and addresses of persons bringing the claims, complaints, or suits and the names and addresses of the court, commission or other bodies where the claims, complaints or suits

1. "Defendants" as used herein refers to both Cigna and INA.

were brought, and the cause number of the claim, complaint, or suit. Question 3 sought the same information for the same period of time for claims, complaints, or suits alleging INA improperly canceled worker's compensation insurance or coverage. Question 4 sought, if the answer to 3 was in the affirmative, the same information as 2. Question 5 sought the same information for the same period of time for claims, complaints, or suits alleging that INA informed other insurance carriers, companies, or risk management entities that INA was involved with a disputed balance on insurance premiums with some person or business. INA was also to state whether any person or business has alleged or claimed that such communications prevented said person or business from acquiring, maintaining, or retaining insurance, including worker's compensation insurance. Question 6 sought, if the answer to 5 was affirmative, the same information as 2 and 4. There were 15 additional interrogatories somewhat less burdensome than the six heretofore described but requiring considerable research to answer. INA filed its objections to some of the fifth set of interrogatories on the basis that the interrogatories were "irrelevant, overbroad and unduly burdensome ... [and] said information is privileged by the insured insurer relationship." On June 19, plaintiff filed its motion to compel answers to the objected to interrogatories. Following hearing, the trial court overruled objections to interrogatories 1 through 6 and 10, and ordered INA to answer the interrogatories within ten days.

On June 26, a stipulation was filed which stated that "any acts of a company sharing the Cigna servicemark shall be imputed to, and binding upon, any other company sharing the Cigna servicemark." The stipulation was signed by plaintiff, Cigna and INA. The stipulation further provided that plaintiff would not prosecute its motions for sanctions served June 1. That motion sought sanctions against Cigna and INA because of Cigna's allegedly assuming "contradictory positions with regard to the names under which Defendants are litigating this case".

On July 7, plaintiff sought a default judgment against Cigna and INA for INA's fail-

ure to meet the 10 day deadline of the June 23 order. It was admitted by plaintiff that INA had supplied names of about 400–500 complaints but had not provided the detail that plaintiff desired and had admittedly not provided all the complaints which occurred. A hearing was held on the same day and the court took the case off the trial setting and entered judgment by default. Subsequently, a hearing was held on the issue of damages. INA requested a jury pursuant to Rule 74.05(b). The court denied that motion. Over INA's objection the court allowed evidence of loss of profits. Nothing in the pleadings alleged any lost profits. The court entered judgment as previously described.

From the discussion at the hearing on plaintiff's motion for default it appears that the court placed heavy emphasis on two factors. The first was that the information in the fifth set of interrogatories had been earlier requested and not given. The second was the stipulation that acts of any company using the Cigna servicemark could be imputed to any other company. We find the trial court misinterpreted the record and the nature of the stipulation and that the entry of a default was an abuse of discretion resulting in injustice.

 Discovery has several purposes including eliminating surprise, aiding in the ascertainment of the truth, narrowing issues, facilitating trial preparation and obtaining relevant information. *State ex rel. Upjohn Company v. Dalton*, 829 S.W.2d 83 (Mo.App. 1992)[1,2]. Trial courts have broad discretion when determining what discovery is appropriate. *State ex rel. Creighton v. Jackson*, 879 S.W.2d 639 (Mo.App.1994)[1–3]. But that discretion is not unfettered. *State ex rel. Kawasaki Motors Corp. U.S.A. v. Ryan*, 777 S.W.2d 247 (Mo.App.1989)[1].

 The trial court may impose sanctions for violations of discovery. Rule 61.01(b); *Whitworth v. Whitworth*, 878 S.W.2d 479 (Mo.App.1994)[2–5]. Default, though drastic, is appropriate where the party has shown a contumacious and deliberate disregard for the court's authority. *Id.* Prior to imposing sanctions for failures in discovery, the trial court must determine whether in the particular situation the opposing party

has been prejudiced. *Dunn v. Wal–Mart Stores, Inc.,* 909 S.W.2d 728 (Mo.App. 1995)[5]. The moving party is responsible for proving its allegations for sanctions pursuant to Rule 61.01. *Ballesteros v. Johnson,* 812 S.W.2d 217 (Mo.App.1991)[22,23].

■ The first document filed in the case by Cigna identified the true defendant in the case, INA. In response to the first set of interrogatories Cigna identified itself as a servicemark. Plaintiff continued to seek discovery from Cigna. The first set of interrogatories were addressed to Cigna and sought information concerning claim or suits against Cigna. Such an interrogatory does not require a response from a different, albeit related, defendant and does not require Cigna to identify claims or suits against INA. The first time INA was requested to furnish the information identified in the fifth set of interrogatories was on May 3, 1995, slightly more than 60 days prior to the trial setting. By any standards the interrogatories were extremely burdensome, of questionable relevance as to any issue in the case except possibly the question of punitive damages,[2] and required substantial expense to answer. In its materials filed in connection with a motion for reconsideration INA outlined the difficulty in assembling the answers which could not be assembled from computer records. Some of the necessary materials were not kept for more than five years. The interrogatory went beyond even that asked of Cigna in the first set of interrogatories which were limited to claims and suits. The fifth set of interrogatories sought claims, complaints, or suits, considerably broadening the areas of research needed to obtain answers to the interrogatories. The interrogatories were not restricted to other persons or entities similarly situated to the plaintiff in this case. Giving INA only ten days to assemble the information sought was unreasonable and constituted an abuse of discretion.

■ The stipulation specifically references a motion for sanctions complaining of Cigna's inconsistent positions as to its corporate status and its servicemark status. The stipulation in essence states that plaintiff will not have to specifically prove which of the companies operating under the servicemark actually committed a particular act. Stipulations are normally controlling and conclusive and courts are bound to enforce them. *International Dehydrated Foods, Inc. v. Boatright Trucking, Incorporated,* 824 S.W.2d 517 (Mo. App.1992)[1]. However, stipulations must be viewed in light of what the parties were attempting to accomplish. *Id.* In *T I Federal Credit Union v. DelBonis,* 72 F.3d 921 (1st Cir.1995)[11–14] the court stated:

> Litigation stipulations can be understood as the analogue of terms binding parties to a contract. As in contract law though, rules limiting litigants to trial stipulations are not absolute.... "[A] stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties." [cites omitted]

■ The stipulation was entered into to address a particular issue involving the merits of the suit. It was not directed at discovery. We cannot interpret the stipulation as a concession that CIGNA should have answered interrogatories addressed to it years before as if they had been directed to INA, and that INA had in some way evaded discovery because of the answers given by CIGNA.

Rule 55.03 provides for the signature of counsel on pleadings, motions and other papers filed with the court. The effect of the signature is:

> (b) **Representation to the Court.** By presenting or maintaining a claim, defense, request, demand, objection, contention, or argument in a pleading, motion, or other paper filed with or submitted to the court, an attorney or party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:
> · · ·
> (3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have

---

**2.** Defendants had requested and been granted a bifurcation of trial on the punitive damages.

evidentiary support after a reasonable opportunity for further investigation or discovery; ...*Id.*

On two occasions plaintiff requested a trial setting. On each occasion counsel certified that discovery was complete. That is a representation that no further discovery is necessary in order for counsel to present the case at trial. It allows the trial court to set the case for trial with some assurance that the setting can be observed and the trial held when scheduled. It is also a representation to the opposing side that no further discovery will be conducted by the party making the representation and the other party can proceed with that assurance in mind. It can be granted that occasions may arise where unexpected discovery will be required after such a representation to the court but that should be the exception. An adverse party may well challenge routine discovery sought after such a representation. The certifications here that discovery was complete cast serious doubt on the credibility of plaintiff's assertions that it could not proceed to trial without the answers to the fifth set of interrogatories.

■ "Where a party admits to a material fact, relevant to an issue in a case, the same is competent against him as substantive evidence of the fact admitted." *Benner v. Johnson Controls, Inc.,* 813 S.W.2d 16 (Mo.App. 1991)[1–3]. By its certification plaintiff admitted that it was prepared for trial without additional discovery. The trial setting which plaintiff obtained by its certification obviously strongly impacted on the court in determining the amount of time it allowed INA to answer the interrogatories and in granting the default.

We are unable to find conduct by INA which reaches the level of contumacy and deliberate disregard for the court's authority. It is in essence being punished for the misconduct perceived by the trial court by Cigna. INA was first requested to answer the interrogatories upon which the sanctions were imposed in early May 1995. It objected, as well it should have. When those objections were overruled it was given ten days to assemble a large amount of information pertaining to its operations throughout the country for a ten year period. The time allowed was one-third that allowed by Rule 57.01. It assembled much information and furnished it to plaintiff, in a form plaintiff considered not to be "usable". Plaintiff did not further refine that term. The material was required in that short order because of a trial setting which plaintiff had obtained by twice certifying that it did not need further discovery in order to go to trial. The trial court abused its discretion in imposing a default judgment as a sanction against INA.

INA's motion to supplement the legal file is denied.

Judgment reversed and cause remanded.

GRIMM, J., and CRAHAN, C.J., concur.