Sandra D. BULL, Respondent,

v.

EXCEL CORPORATION, Appellant.

No. WD 55609.

Missouri Court of Appeals,
Western District.

Submitted Sept. 16, 1998.

Decided Feb. 9, 1999.

William A. Peterson, Marshall, for Appellant.

John R. Fox, Kansas City, for Respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

JAMES M. SMART, Jr., Judge.

Excel Corporation ("Excel") appeals a final award of the Labor and Industrial Relations Commission ("Commission") affirming the Administrative Law Judge's ("ALJ") award of $8,501.14 for temporary total disability and $11,320.76 for permanent partial disability to Sandra Bull based on her last exposure to repetitive motions causing bilateral carpal tunnel syndrome and related injuries. Excel challenges the Commission's finding as to the date of injury. Excel further contends that Tyson Foods, Ms. Bull's previous employer, should have borne the cost of compensating Ms. Bull because she had been employed by Excel for less than ninety days at the time her "injury" occurred. Because we conclude that the stipulation as to "date of injury" was legally immaterial as to the allocation of liability to Excel, and because the Commission was not bound by any stipulation as to the period of exposure to the harmful repetitive motion, we affirm the Commission's decision granting Ms. Bull an award against Excel under §§ 287.063 and 287.067.7.

Facts

Sandra Bull began working for Tyson Foods on July 25, 1994, shaving the "butts and armpits" of hogs. The shaving process was physically demanding, and Ms. Bull began experiencing problems with her shoulders. Later, Ms. Bull was transferred to a position in which she separated the stomachs from the livers of hogs. Ms. Bull would hold the liver of the hog in her left hand and a large knife in her right hand. She then cut the liver from the stomach using the knife, repeating this process between 6,000 and 9,000 times per day, stopping every twenty minutes to sharpen her knife. It is not possible to precisely pinpoint the date on which the change in job duties occurred. Ms. Bull was unable to clearly recall the progression of events and could not remember whether the change was made before Excel's purchase of the business from Tyson Foods on September 1, 1995, or near that time. Ms. Bull remained with Excel until she was terminated on January 15, 1996.

It is unclear when Ms. Bull began to develop problems associated with the injury for which she received compensation. Dana Latimer, the nursing supervisor in charge of workers' compensation for Excel, testified that Ms. Bull had come to the nurses' station many times, both before and after Excel purchased the plant, complaining of pain in her upper extremities. Ms. Bull complained about her fingers, arms, hands and shoulders, although the complaints differed as to severity and symptoms. Mr. Jim Schulter,

the supervisor of the "kill floor," testified that Ms. Bull went to the nurse's station often, although he did not know the exact number of times. He also did not know how long Ms. Bull had been cutting livers. After Excel purchased the plant, Ms. Latimer sent Ms. Bull to Dr. C. Alan Scott because she tired of seeing Ms. Bull at the nurse's station.

Ms. Bull saw Dr. Scott on September 29, 1995, for pain in her left hand. He found that her exam was "remarkable only for soreness over the dorsum of the hand" and diagnosed tenosynovitis. Dr. Scott recommended restrictions on cutting livers, however, Excel did not accommodate this recommendation. Although Ms. Bull was in pain and "bugged" Excel to see a doctor, Excel did not authorize her to go.

Ms. Bull went to see Dr. Scott again on January 4, 1996. Dr. Scott believed that Ms. Bull had arthritis or cumulative trauma syndrome. He referred her to Dr. Janie R. Vale, a physician with Columbia Occupational Medicine, who treated many Tyson and Excel employees. Dr. Vale first examined Ms. Bull on January 25, 1996. Ms. Bull told the doctor that she was having trouble with her hands and forearms. She also noted difficulty in sleeping, as well as numbness and tingling. Dr. Vale reported that Ms. Bull associated the onset of her problems with the job of cutting livers. Ms. Bull told Dr. Vale that she had been cutting livers for about fourteen months. Dr. Vale diagnosed fatigue and tendinitis of the forearm, wrists and hands associated with work activities. Dr. Vale recommended conservative treatment, rather than surgical intervention.

Dr. Vale next saw Ms. Bull on February 15, 1996, because of Ms. Bull's persistent symptoms. Ms. Bull was feeling tingling and burning throughout both hands, particularly the right hand. Electrodiagnostic studies were ordered. The studies showed borderline median compression at wrist level. Eventually, Dr. Vale recommended obtaining a surgical opinion concerning a release of the right carpal tunnel because Ms. Bull was not improving with conservative care. Dr. Vale referred Ms. Bull to Dr. Ronald Carter.

Dr. Carter examined Ms. Bull on April 1, 1996, and performed a carpal tunnel release that afternoon on her right wrist. In his testimony, Dr. Carter explained that carpal tunnel syndrome is caused by swelling of the carpal tunnel which causes pressure on the median nerve resulting in numbness, increased pain and burning. Because of the tight space, the tendon swells and there is no space for expansion. The level of symptoms and amount of pain varies and it can develop, resolve or partially resolve, and then return. This variance can be caused by a variety of things. Dr. Carter could not determine when the cumulative effect reached such swelling and compression as to make surgery necessary.

Ms. Bull saw Dr. Vale and Dr. Carter for follow-up visits. Before releasing her, both doctors noted a loss of motion and pain or tenderness. Both doctors recommended limitations on future employment to prevent frequent pinching, gripping, pronation and supination use of the upper extremities. Dr. Vale opined that Ms. Bull's job of cutting livers was causally related to her condition and that the work at Tyson was the substantial contributing factor to her condition.

Dr. James P. Hopkins performed a rating examination on Ms. Bull on September 17, 1996. Dr. Hopkins found that Ms. Bull had a twenty-five percent permanent partial disability to her right forearm and a fifteen percent permanent partial disability to her left wrist. Because both extremities were involved, Dr. Hopkins assigned a fifteen percent loading factor.

### The Hearing

Ms. Bull filed a claim for workers' compensation benefits on April 23, 1996. At a hearing on the matter, held April 4, 1997, the parties stipulated to the date of the injury as September 20, 1995. The ALJ noted further stipulations:

> THE [ALJ]: And the parties have also stipulated that the issues today are as follows: The parties have stipulated that the exposure on the repetitive motion which is the cause of the injury was for a period of less that three months at Excel Corp.?

MR. PETERSON: Yes.

MR. FOX: Yes.

THE [ALJ]: And the issues shall be whether the evidence determines that the exposure to the repetitive motion with Tyson Foods was the substantial contributing factor to the injury such that Excel Corp. is not liable for such occupational disease pursuant to Section 287.067.7.

MR. FOX: That's correct.

MR. PETERSON: Yes, Your Honor.

After the hearing, the ALJ found that the date of Ms. Bull's "injury" was January 15, 1996. The ALJ further found that she had been exposed to the hazard of repetitious motion for over three months at Excel. The ALJ also concluded that, in any event, Excel did not meet its burden of showing that Tyson was the substantial contributing factor to Ms. Bull's injury.

The ALJ found that Ms. Bull suffered an eleven percent partial disability to her body as a whole. He ordered Excel to pay $342.00 for 24 6/7 weeks ($8,501.14) of temporary total disability and $257.29 for 44 weeks ($11,320.76) of permanent partial disability to Ms. Bull for last exposing her to conditions causing bilateral carpal tunnel syndrome and related injuries. Excel filed an application for review with the Commission. The Commission affirmed the award and adopted the decision of the ALJ.

Excel appeals.

### Standard of Review

We begin by noting that "[t]he fundamental purpose of the Workers' Compensation Law is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Wolfgeher v. Wagner Cartage Serv., Inc.,* 646 S.W.2d 781, 783 (Mo. banc 1983). In reviewing Excel's contention, we are guided by § 288.210, RSMo Supp.1997, which provides, in pertinent part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal,

may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

In *Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 570 (Mo.App.1995), this court summarized the process for the two-step review of an award made by the Commission in workers' compensation decisions. First, an appellate court must determine whether the whole record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the Commission's decision. *Id.* If the court finds that it does, the second step requires that the court make a determination as to whether the decision is against the overwhelming weight of the evidence. *Id.* In this second step, all of the evidence in the record is considered, including evidence not favorable to the decision. *Id.* We are not bound by the Commission's conclusions of law or the its application of law to the facts. *Division of Employment Sec. v. Taney County Dist. R–III,* 922 S.W.2d 391, 393 (Mo. banc 1996). We do not defer to the Commission on decisions that are interpretations or applications of law rather than determinations of fact. *West v. Posten Constr. Co.,* 804 S.W.2d 743, 744 (Mo. banc 1991). In cases where the Commission adopts the findings and award of the ALJ before whom the witnesses testified, the resulting consistency as to credibility determinations is a powerful reason to uphold the award on appeal. *Davis,* 903 S.W.2d at 571.

### Stipulations

Excel argues that the Commission erred in finding that Ms. Bull sustained an injury on January 15, 1996, because the parties stipulated that she had sustained an injury by

accident or occupational disease on the date of September 20, 1995. Because Ms. Bull had been employed by Excel for less than ninety days as of September 20, 1995, Excel reasons that it is entitled to rely upon the defense that the claimant's work at Tyson was the "substantial contributing factor" to her carpal tunnel condition. Excel does not challenge the ALJ's finding that Ms. Bull suffered a compensable injury. However, it does contend, based upon the stipulation between the parties, that it is not responsible for compensation because, in accordance with the stipulated date of injury, the last exposure to repetitive motion occurred for a period of less than three months and the repetitive motion that Ms. Bull was exposed to at Tyson Foods was the substantial contributing factor to the injury.

We examine the effect of the stipulation in the light of circumstances and the law. Ms. Bull sought compensation for carpal tunnel syndrome, a known occupational disease. *See Weniger v. Pulitzer Publ'g. Co.*, 860 S.W.2d 359, 360 (Mo.App.1993). Occupational diseases are compensable under the Missouri Worker's Compensation Act. Two statutory sections are applicable. Section 287.063 states, in pertinent part:

> 1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

> 2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

Once an employee is found to have suffered a compensable injury under § 287.063, the question becomes one of the employer's liability for the injury. *Hunsicker v. J.C. Indus., Inc.*, 952 S.W.2d 376, 381. In determining liability in repetitive motion cases, § 287.067.7 states:

> With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

The centerpiece of Excel's argument is the stipulation that the parties entered into concerning the date of Ms. Bull's injury. Excel suggests that the stipulation is based on the concept that September 20, 1995, is when the occupational disease manifested itself. Thus, Excel agreed to the idea that compensability began on September 20, 1995. Excel thought, however, that not only was it agreeing that compensability began on September 20, but that it was also agreeing that only the time of Ms. Bull's exposure prior to September 20 can be considered in determining the time of exposure pursuant to § 287.067.7.

We begin by noting that stipulations of fact are generally binding in Missouri. *Pierson v. Allen*, 409 S.W.2d 127, 130 (Mo.1966). Although stipulations are controlling and conclusive and courts are bound to enforce them, they are to be viewed with an eye toward what they were designed to accomplish. *Spacewalker, Inc. v. American Family Mut. Ins. Co.*, 954 S.W.2d 420, 424 (Mo.App.1997). Also, a stipulation may not be invoked to fix a conclusion of law. *Midella Enters., Inc. v. Missouri State Highway Comm'n*, 570 S.W.2d 298, 301 (Mo.App.1978) (citing *Aubuchon v. Bender*, 44 Mo. 560, 570 (1869)).

### "Date of Injury"

Actually, there were three stipulations: 1) that the date of injury was September 20, 1995; 2) that the exposure to the harmful repetitive motion at Excel was for a period of less than three months; and 3) the issue to be tried was the issue of whether the repetitive motion with Tyson Foods was the substantial contributing factor to the injury. Excel contends on appeal that the Commis-

sion erred in failing to enforce the stipulation as to the date of injury. Excel does not directly complain of failure to enforce the other stipulations.

■ Excel's argument reveals that Excel believed that by obtaining a stipulation from the claimant that the "date of injury" was September 20, 1995, it was securing for itself a determination that the exposure to the repetitive motion during employment with Excel was less than three months. Excel presumes that the period of exposure to the harmful repetitive motion is calculated only to the date the disease manifests itself. By securing such a stipulation, Excel reasons that it should then be able to defeat Ms. Bull's claim simply by presenting evidence that her previous employment at Tyson (who was not a party to the claim) was the "substantial contributing factor" to her carpal tunnel.

■ However, it must be noted that "date of injury" does not have the same significance in a repetitive motion cases as it does in cases involving specific injuries. Nor do we believe that a stipulation as to "date of injury" necessarily governs a determination as to the period of exposure to repetitive motion. It may be that "date of injury" is a term used to designate the point at which the compensability begins in occupational disease cases. However, the concept of date of injury cannot, in repetitive motion cases, be used as a factor in the allocation of liability in view of the statutory language and the construction the courts have placed on that language.

The statutes in question (§§ 287.063 and 287.067.7) do not use the term "date of injury" or "injury" in connection with repetitive motion cases. Rather, the key concept is the period of exposure to the repetitive motion prior to the filing of the claim. Although the statute does not specify the date of the filing of the claim as the reference point for determining the duration of the exposure to the repetitive motion, the courts have interpreted the statute as implying the date of filing the claim as a reference point. "The starting point in applying the last exposure rule is that the employer liable for compensation is the last employer to expose the employee to the occupational hazard prior to the filing of

the claim." *Johnson v. Denton Constr. Co.,* 911 S.W.2d 286, 288 (Mo. banc 1995). Thus, case law does not support Excel's argument that the calculation of the period of exposure ends with the "date of injury," or the date the disease is manifested.

In *Crabill v. Hannicon,* 963 S.W.2d 440 (Mo.App.1998), the claimant challenged the Commission's findings as to the date of disability. The court explained:

Pursuant to the last exposure rule, determination of liability is not dependent upon the date of disability. The last exposure rule is not a rule of causation. Instead, as previously discussed, liability falls on the last employer to expose Claimant to the occupational hazard for which claim is made.

*Id.* at 444.

Occupational diseases differ from compensable accidents or injuries where the date can be pinpointed with precision. Diseases such as carpal tunnel syndrome are progressive and not caused by a single event. They are difficult to diagnose, and it is difficult to determine a specific date of occurrence. The legislature, in promulgating § 287.063 and § 287.067, has chosen to place liability with the last employer who exposed the worker to the repetitive motion causing the condition.

Under § 287.067.7, an employer prior to the last employer may be liable only when:

(1) a worker is employed by two or more employers, performing work for each which exposes him to repetitive motion that causes an occupational disease, (2) the exposure to that hazard while employed by the last employer is for a period of less than three months, and (3) the exposure to the same hazard while employed by an employer prior to the last employer is the substantial contributing factor to the disease, . . . .

*Bissell v. Paramount Cap Mfg. Co.,* 962 S.W.2d 13, 18 (Mo.App.1998). Subsection 7 does not apply where the last employer exposes the worker to the harmful repetitive motion for a period of three months or more. *Id.* Here, Ms. Bull was clearly exposed to the

harmful repetitive motion for more than the three month threshold.

Recently, this court in *Miller v. Unitog Co.*, 965 S.W.2d 373 (Mo.App.1998) and *Feltrop v. Eskens Drywall & Insulation*, 957 S.W.2d 408 (Mo.App.1997), applied the last exposure rule against arguments similar to Excel's. In *Miller*, the employee worked for Carrollton Specialty Products folding greeting cards before she went to work for Unitog. *Miller*, 965 S.W.2d at 374. The employee experienced pain in her hands while working at Carrollton. Although the pain abated at Unitog, it recurred when the employee began doing top stitching. *Id.* A report of injury was filed ninety-one days after the employee had begun employment with Unitog. *Id.* Unitog sent the employee to a doctor who diagnosed carpal tunnel syndrome, and eventually the employee filed for compensation against both employers. *Id.* After being held liable for the employee's injuries, Unitog appealed, arguing that it was not fair to hold it liable where the substantial contributing cause of the injury was the employee's work at Carrollton. *Id.* at 375. Although Unitog's argument was found to have "initial appeal," we held that Unitog was responsible pursuant to the last exposure rule. *Id.* In *Feltrop* we performed a similar analysis in deciding whether the first insurer or second insurer of the same employer was liable on a workers' compensation claim. *Feltrop*, 957 S.W.2d at 415. Consequently, any stipulation as to "date of injury" in this case was neither factually nor legally determinative on the issue of liability.

### Conclusion of Law

■ Second, even though the parties stipulated to the "date of injury" (with the Claimant perhaps not realizing what advantage Excel hoped to gain with that stipulation), the Commission was not bound by it to the extent that it represented an attempt to fix a conclusion of law. *Midella Enters.*, 570 S.W.2d at 301. In *Midella*, the court refused to be bound by a stipulation as to the legal effect of certain real estate instruments.

The court carefully reviewed the instruments and concluded that the parties' stipulation, which was based on their construction of the instruments, was erroneous and was not binding on the court. *Id.* In *Aubuchon v. Bender*, 44 Mo. 560 (1869), the parties had stipulated as to the identity of the heirs at law of one Francois, and had neglected to include his father as one of the heirs. The court stated that, "no agreed statement of facts can fix a conclusion of law. The relationship and death are facts to be admitted, but who were his heirs is a question of law which the court is bound to declare." *Id.* at 570. In this case, in view of the fact that Excel had evidence related to the "substantial contributing factor" issue and Ms. Bull had none,[1] Excel attempts to use the stipulation to fix a conclusion of law as to Excel's liability.

### Avoidance of Injustice

■ Stipulations may also be avoided when their enforcement would work a manifest injustice. *Spacewalker*, 954 S.W.2d at 424. In *Spacewalker*, the plaintiff brought suit against Insurance Company of North America ("INA") and Cigna Insurance Company, two related but separate entities. *Id.* at 421. The parties entered into a stipulation that any acts of companies that shared the Cigna servicemark would be binding on any other company sharing that servicemark. *Id.* at 423. The stipulation also provided that the plaintiff would not prosecute its motions for sanctions against the defendants. *Id.* Apparently, *Spacewalker* sought sanctions against both INA and Cigna for "allegedly assuming contradictory positions with regard to the names under which Defendants [we]re litigating this case." Plaintiffs then sought a default judgment against the defendants because of INA's failure to met the deadline for answering interrogatories. The default was granted, with the trial court placing heavy emphasis on the stipulation. On appeal, the court found that the trial court had misinterpreted the nature of the stipulation. *Id.* In so holding, the court explained that the stipulation was not directed at discovery, but in-

---

1. We have no explanation, apart from possible confusion of counsel, as to why Ms. Bull, who had no medical opinion evidence as to the "sub-stantial contributing factor" issue, would agree that the only issue to be tried was that issue.

stead directed at an issue on the merits of the suit. *Id.* at 424. The court also, however, stressed that the binding effect of a stipulation is not absolute. "[A] Stipulation should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties." *Id.* at 424 (quoting *T I Federal Credit Union v. DelBonis,* 72 F.3d 921 (1st Cir.1995)).

*Howard v. Missouri State Bd. of Educ.,* 847 S.W.2d 187 (Mo.App.1993) is also instructive. In that case, Howard, a substitute teacher who had her teaching license revoked on the ground that she had engaged in immorality, petitioned for review in the circuit court. *Id.* at 188. She filed a motion for summary judgment which was sustained by the trial court. *Id.* at 189. Howard supported her motion for summary judgment with a copy of a stipulation entered into by the parties, providing that Howard would present evidence that her actions were a result of a mental disorder or its treatment and not attributable to a lack of morality or intent to commit any immoral acts. *Id.* In holding that the trial court erred in sustaining the motion for summary judgment, the appellate court noted that the stipulation was not tantamount to an admission as to the truth of the proposed testimony, but rather a stipulation as to a "procedural matter." *Id.* at 192. In reaching this decision, the court noted that the language of a stipulation would not be construed so as to give it the effect of admitting an obviously controverted fact or as a waiver of a right plainly not intended to be surrendered. *Id.* at 190–91.

In the present case, rigid enforcement of all three stipulations would work a manifest injustice upon Ms. Bull. Ms. Bull suffered a compensable occupational disease. She was exposed to the harmful repetitive motion at Excel for more than five months. The evidence clearly shows that Excel bears responsibility for her occupational disease under the "last exposure" rule. Her claim against Excel was a "lock." She filed a claim only against Excel and not against Tyson. We cannot believe she intended by her stipulation to destroy her claim against Excel, the only employer she had joined in the case.

There is no basis in a case such as this for enforcing any stipulation which is contrary to all the record facts and which might otherwise constitute a gratuitous disemboweling of claimant's clearly meritorious claim.

Because the exposure at Excel exceeded three months, the ALJ was not required to resolve the issue of the "substantial contributing factor" to Ms. Bull's injury. Ms. Bull was "conclusively deemed to have been exposed to the hazards of an occupational disease" because she proved that she was exposed for over five months to a process at Excel "in which the hazard of the disease exists[.]" Thus, whether Excel showed that exposure at Tyson was the "substantial contributing factor" was legally immaterial. It was within the authority of the Commission to refuse to allow Ms. Bull to gratuitously stipulate away her claim in the face of undisputed facts establishing the merit of her claim. *Spacewalker,* 954 S.W.2d at 424.

Excel relies upon *Mayfield v. Brown Shoe Co.,* 941 S.W.2d 31 (Mo.App.1997) to support its position. *Mayfield* involves an exposure with a second employer for a period of less than ninety days. For the reasons already stated, *Mayfield* does not assist Excel in this case.

Excel also presents the argument that the Commission erred because it based its decision on only the fact that Ms. Bull was employed by Excel for over ninety days, and ignored the issue of whether Ms. Bull was *exposed* to the repetitive motion for over ninety days. We disagree with Excel's reading of the record. The evidence showed that Ms. Bull was not only employed by Excel for over ninety days, but also that she was exposed to the same harmful, repetitive motions for over ninety days. We do not believe the Commission based its ruling on the fact of employment, but rather followed the terms of the statute in basing the filing on her exposure.

Excel also argues that to construe the statute in such a way that the liability turns on the exposure prior to the filing of the claim rather than exposure prior to the first development of symptoms is unjust to the later employer, and may also have the unintended consequence of encouraging the later

employer to discharge the worker before ninety days of exposure rather than continuing the worker in its employ. Excel may be right about the unintended consequence, but it would appear that there is no perfect approach to the issue of allocating responsibility in repetitive motion cases. The approach thus far taken by the courts, which attempts to apply the statutory focus on the entire period of exposure and not just the exposure prior to the manifestation of injury, is more in keeping with the legislative intent than the alternative suggested by Excel. Excel lacks authority for the proposition that the Commission misapplied the statutory provisions. Accordingly, we cannot say the Commission erred in its application of the law.

### Conclusion

Ms. Bull was exposed at Excel to the repetitive motion causing her injury for a period exceeding ninety days and, under the last exposure rule, Excel is liable. The failure of the Commission to follow the stipulation of date of injury is of no consequence on this appeal because date of injury does not, in repetitive motion cases, figure into the calculation of the period of exposure. The failure of the Commission to enforce the additional stipulations as to the period of exposure is not directly challenged on this appeal, and, in any event, would not have been an error of law because the Commission was not bound by any stipulation which was clearly contrary to the actual facts and which would result in a manifest injustice. The award of the Commission is affirmed.

ELLIS and HOWARD, JJ., concur.