Debra MAYFIELD, Respondent–
Claimant,

v.

BROWN SHOE COMPANY,
Appellant–Employer,

and

Arlee Home Fashions, Respondent–
Employer,

Liberty Mutual Insurance Co.,
Respondent–Insurer.

No. 21215.

Missouri Court of Appeals,
Southern District,
Division Two.

March 26, 1997.

Raymond E. Whiteaker, John Wise, Whiteaker & Wilson, Springfield, for Appellant.

Michael D. Mayes, Schmidt, Kirby & Sullivan, Springfield, for Respondent–Claimant.

C.J. Moeller, Wallace Saunders, Austin, Brown and Enochs, P.C., Springfield, for Respondent–Employer.

SHRUM, Judge.

This is a workers' compensation case. The question presented is which of two consecutive employers is liable for the work-related occupational disease of Debra Mayfield (Claimant).

The Labor and Industrial Relations Commission (Commission) ruled that Claimant's first employer, Brown Shoe Co. (Brown), was liable under the three-month provision of § 287.067.7.[1] On appeal, Brown contends that Claimant's second employer, Arlee Home Fashions (Arlee),[2] is liable as a matter of law under the "last exposure" rule of § 287.063. This Court disagrees with Brown's contentions. We affirm the Commission's award.

## FACTS

Claimant worked for Brown for approximately three and one-half years before leaving on June 30, 1994. She then started to work for Arlee on July 6, 1994. At Brown, Claimant sewed certain parts of shoes by means of a machine. At Arlee, she used a machine to sew chair pads. Both jobs required Claimant to use her left hand and arm in a repetitive fashion. In both employments, Claimant flexed her arm at the elbow during each repetitive maneuver.

Within a week after starting at Arlee, Claimant noticed that she was having pain in her left wrist and numbness in the fourth and fifth fingers of her left hand. She promptly reported these problems to her floor lady. By the time Arlee referred Claimant to a physician's assistant, Claimant was also experiencing pain in her left elbow and lower arm.

The left-arm symptoms described above were new to Claimant. While at Brown, Claimant had experienced numbness in her left thumb for two weeks on one occasion but never had numbness or pain in other parts of her left upper extremity. She saw a nurse at Brown only one time for the thumb problem. At trial Claimant testified that only occasionally did she continue to have left-thumb numbness. However, Claimant's left arm and hand symptoms persisted and worsened as she continued working at Arlee. In September 1994, Claimant saw Stephen Hawkins, M.D. After examination, Dr. Hawkins put Claimant on sick leave until she saw an orthopedic physician. Arlee refused to provide Claimant with an orthopedic consult and at the time of her hearing, Claimant was still off work.

Ultimately, Claimant's lawyer referred her to David G. Paff, M.D., of Springfield. Dr. Paff's specialty is occupational medicine. After examining Claimant, Dr. Paff concluded that she had "developed ulnar neuropathy in the course of her employment." In a follow-up report, Dr. Paff declared "[I]t is [my] opinion that the repetitive motion most likely culminating in carpal tunnel syndrome was that which occurred while she was employed by Brown Shoe Company." Later, during deposition, Dr. Paff testified that Claimant definitely had an ulnar neuropathy, most likely involving the elbow and not the wrist. In effect, Dr Paff's deposition testimony corrected his letter report by explaining that Claimant did not have carpal tunnel syndrome, which involves the median nerve at the wrist, but rather had an ulnar nerve disorder.

Claimant filed her claim for workers' compensation against both Brown and Arlee. She alleged that in June or July 1994 she sustained an "occupational disease" due to "[r]epetitive work [performed for] both employers which required repetitive motion of the hands and wrists, causing pain and numbness in the hand and wrist."

An Administrative Law Judge (ALJ) heard the claim and issued a temporary or partial award in which she concluded that Claimant had sustained an occupational disease. After summarizing the evidence and making fact findings, the ALJ found that Arlee was not liable for Claimant's injuries but that Brown was responsible. The ALJ concluded her analysis of the case:

"Claimant had worked at Brown ... for 3 1/2 years and at Arlee for ... less than a week before developing symptoms. Dr. Paff testified that he found the more substantial of the two employments in causing this injury is Brown ... based on the length of time claimant worked there versus Arlee ... and he found claimant's em-

1. All statutory references are to RSMo 1994 unless otherwise indicated.

2. We call Claimant and Arlee "Respondents" when it is necessary in this opinion to refer to them collectively.

ployment at Arlee ... to have been 'the straw that broke the camel's back.' Based on Dr. Paff's testimony, I find that under Section 287.067.7 the exposure to the repetitive motion with Brown ... was the substantial contributing factor to claimant's injuries and Brown ... is therefore liable for claimant's injuries."

■ Brown appealed to the Commission. The Commission adopted and affirmed the ALJ's findings. This appeal followed.[3]

## STANDARD OF REVIEW

■ This appeal involves the application and interpretation of the three-month provision of § 287.067 in conjunction with the last exposure rule of § 287.063.

"When an appellate court reviews an award by Commission in a workers' compensation case, an award based on interpretation or application of law, rather than a determination of fact, is reviewed for correctness without deference to Commission's decision. *Simmerly v. Bailey Corp.*, 890 S.W.2d 12, 14[2] (Mo.App. S.D.1994), citing *West v. Posten Const. Co.*, 804 S.W.2d 743, 744 (Mo.banc 1991). Findings of ultimate facts reached through application of rules of law rather than by natural reasoning based on facts alone are conclusions of law. *Simmerly*, 890 S.W.2d at 14[3]. Such findings fall within the appellate court's province of review and correction. *West*, 804 S.W.2d at 744[2]; *Davis* [*v. Research Medical Center*] 903 S.W.2d [557 (Mo.App.1995)] at 571[16]."

*Vaught v. Vaughts, Inc., et al.*, 938 S.W.2d 931, 942–43, (Mo.App.S.D.1997).

## APPLICABLE STATUTORY PROVISIONS

In pertinent part, the last exposure provisions of the Workers' Compensation Act, § 287.063.1 and .2, read:

"1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject only to the provisions ... set forth in [§ 287.067.7]."

"2. The employer liable for the compensation in this section shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure."

The three-month exception to the last exposure rule found in § 287.067.7 reads:

"With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease."

## DISCUSSION AND DECISION

On appeal, Brown maintains that the Commission erred in using § 287.067.7 to impose liability on Brown and relieve Arlee of the responsibility it would otherwise have under the last exposure rule, § 287.063. Brown's point has several parts, each of which we examine separately.

■ In developing its primary argument, Brown asserts § 287.067.7 cannot be used to shift liability from the last exposure employer to a prior employer unless there is before the Commission an expert medical opinion that establishes "the substantial contributing factor" requirement of the statute. We agree. In Missouri, expert medical testimony is mandatory in a workers' compensation case where a specific medical conclusion is not clear, simple, or well recognized by lay persons and is not a matter within the expertise of the ALJ. *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600[10] (Mo.banc 1994). "As a general rule, a claimant's medi-

---

**3.** Although the Commission's award is only temporary or partial, the award is still eligible for appellate review since it concerns only the issue of Brown's liability and presents no issues regarding the amount, duration, or other aspects of the award. *Marrone v. Modine Heat and Transfer*, 918 S.W.2d 315, 317–19 (Mo.App.1996).

cal expert in an occupational disease case must establish the probability that the disease was caused by conditions in the work place." *Hayes v. Hudson Foods, Inc.,* 818 S.W.2d 296, 299[1] (Mo.App.1991). From these rules it logically follows that a party who seeks to invoke § 287.067.7 must adduce evidence via a medical expert to demonstrate "that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury."

Relying on this rule, Brown insists that Dr. Paff's testimony cannot be read as establishing that the exposure at Brown was the substantial contributing factor to Claimant's ulnar neuropathy; hence the Commission erred in shifting liability from Arlee to Brown. To fully understand and analyze this argument, we examine part of the testimony that bore on the subject.

Dr. Paff testified that exposures to repetitive motion at both Brown and Arlee were contributing factors in the development of Claimant's ulnar neuropathy. When asked which exposure was "the contributing factor," Dr. Paff's answers included these:

"Q. [To Dr. Paff] Next, I would ask if you have an opinion as to what the substantial contributing factor to [Claimant's] injury was?

[Objections omitted]

"Q. [By Mr. Mayes] Answering that from a medical standpoint, Doctor, what would your opinion be?

"A. Well, my opinion would be that the more substantial of the two factors, if you can really separate them out that way, would be [Brown]. And the reason for that is basically because of the length of time, three years versus three days. Or several days.

. . . .

"Q. [By Mr. Francis] From a medical diagnosis, is it your opinion that the work at Brown ... was a substantial contributing factor to the ulnar neuropathy that you diagnosed?

"A. [By Dr. Paff] Is your statement 'a' substantial or 'the' substantial?

"Q. "A."

"A. Yes, it is my opinion.

. . . .

"Q. [By Mr. Francis] Is it your opinion, Doctor, that since [Claimant] began experiencing symptomatology within less than one week of her work at Arlee's that the work at Arlee's was a triggering or precipitating factor?

"A. I would use the term, the straw that broke the camel's back.

. . . .

"Q. [By Mr. Whiteaker] Doctor, in regard to Mr. Francis' question about substantial contributing factor, you do not believe that her work at Brown Shoe was the substantial contributing factor, merely a contributing factor. Is that correct?

"A. [By Dr. Paff] Well, it's definitely 'a.' If I'm going to answer the question 'the,' I need a definition of what you mean by that. That would really be helpful to me.

"Q. Doctor, I cannot provide that to you. And I don't know that anybody else can provide that to you. All you're saying, it was a contributing factor at this time?

"A. I'm saying it was a contributing factor, that's right.

"Q. And you're saying it was a contributing factor merely from the fact that she worked in that environment for three years?

"A. Due to the fact that she was in that environment much longer than she was in the last environment, which was only several days.

. . . .

"Q. [By Mr. Mayes] Doctor, do you have [an] opinion which of these two employments was a greater contributing factor to [Claimant's] injury?

[Objections omitted]

"A. The question, as I understand it, was which employment was the more important factor?

"Q. [By Mr. Mayes] That's correct.

"A. As I think I've previously stated, it's my opinion that the more important factor was Brown...."

Brown points to Dr. Paff's opinion that Claimant's work at Brown was "a substantial contributing factor" and his refusal to say that such work was "the substantial contributing factor," and from these excerpts, Brown would have us conclude that this record lacks the type of evidence contemplated by the legislature when it enacted § 287.067.7. This we will not do. Brown is mistaken when it insists that "the substantial contribution factor" evidence requirement is not met unless a medical expert testifies in those exact words. *See P.M. v. Metromedia Steakhouses Co.,* 931 S.W.2d 846, 849 (Mo. App.1996). There is nothing talismanic about the phrase in question. *Id.* The words a medical expert uses when testifying are often important, not so much in and of themselves, but as a reflection of what impressions such witness wishes to impart. *Id.*

"[T]he substantial contributing factor" was left undefined by the legislature when it enacted § 287.067.7. Absent from the statute is a percentage figure, quantitative measure, or other standard that can be used to decide when liability must be shifted. No appellate case has explained what evidence is necessary to satisfy the requirements of § 287.067.7. Accordingly, it becomes our task to interpret the meaning of this language and the legislative intent to be ascribed to such phrase. *See Vice v. Thurston,* 793 S.W.2d 900, 905[6] (Mo.App.1990).

■ When interpreting a statute, our primary responsibility is to ascertain the intent of the legislature from the language used and give effect to that intent if possible. *Weston Point Resort Condominium Owners' Ass'n. v. Floro,* 796 S.W.2d 928, 930[2] (Mo. App.1990). To arrive at the legislature's intent when it leaves a phrase or term undefined, the objectives of the act are to be considered, and the construction given must be reasonable and logical. *State ex rel. Rhodes v. Crouch,* 621 S.W.2d 47, 49[3] (Mo. banc 1981). In such cases, it is appropriate to assume that the ordinary meaning of words used by the legislature accurately expresses the legislative intent. *See State ex rel. Metropolitan St. Louis Sewer Dist. v. Sanders,* 807 S.W.2d 87, 88[1,2] (Mo.banc 1991).

■ It appears that the legislature enacted § 287.067.7 to avoid the sometimes harsh result of the last exposure rule when that last exposure is short in duration and follows a prior employment that was more substantial in duration, or more significant in the development of the occupational disease, or both. To accomplish that end, the legislature empowered the Commission to choose between two employers, and in turn two potential contributing factors. Having in mind the objective of § 287.067.7 and the above-mentioned canons of construction, we conclude that "the substantial contributing factor" language in § 287.067.7 means that factor which is the more responsible of the two contributing factors.

■ Measured by that standard, there was evidence to support the Commission's finding in this case. Dr. Paff unequivocally testified, to a reasonable degree of medical certainty, that the "more substantial" or "more important" factor was Claimant's employment at Brown. Such testimony provided a sufficient evidentiary basis for the Commission to conclude, as a matter of law, that the exposure at Brown was the substantial contributing factor to Claimant's injury.

Brown also asserts that because symptoms of ulnar neuropathy did not arise while Claimant worked at Brown, Claimant's employment at Brown could not have been "the substantial contributing factor" to Claimant's ulnar neuropathy. First, we note that if this argument is grounded in law, it fails as there is no legal support for it. Section 287.067.7 does not contain such a requirement, nor is there case law to that effect. Second, if this argument is grounded in medical causation, it fails since there is no medical evidence to support it. Dr. Paff testified otherwise, and Brown offered no evidence from any other medical expert to support this argument. Specifically, Dr. Paff testified that, in his opinion, Claimant's work at Brown was a "contributing cause to her ulnar neuropathy." He reached this opinion despite Claimant's lack of ulnar nerve symptoms while she worked at Brown. Dr. Paff made the causal connection due to the fact that Claimant was in the repetitive environment "much longer [at Brown] than she was [at Arlee], which was only several days." Dr. Paff's opinion on

causation had in support of it reasons and facts supported by competent evidence that gave his opinion sufficient probative force to be substantial evidence. *See Pippin v. St. Joe Minerals Corp.,* 799 S.W.2d 898, 904[5] (Mo.App.1990). We reject this part of Brown's point.

In the last prong of its point relied on, Brown maintains that the Commission erred because Claimant's "repetitive motion activities ... at Arlee ... were not the same repetitive motion activities in which [Claimant] engaged at Brown...." This argument also lacks merit. There is no requirement in § 287.067.7 that the repetitive motion with a prior employer be the same as the repetitive motion with the last employer. Claimant did testify that the sewing "maneuvers" required at Brown were different than at Arlee, that each type of operation was different, and that each job required a "different type of repetitive motion ... [a]s far as the position and everything." However, she also testified that both jobs required her to do repetitive work with her elbow in a flexed position. She recounted in detail the number of maneuvers per hour at each job, how they were performed at each employment, and that on both jobs for each maneuver she flexed her elbow at "about" ninety degrees. Dr. Paff testified that two factors play a role in the development of ulnar neuropathy in a case such as this, the first being repetitiveness and the other posture. Continuing, he testified that a posture that is particularly troublesome in the development of ulnar neuropathy is one in which the elbow is flexed, that is "[b]ent[,] not straight[ ][f]or long periods of time or repetitively." The record clearly demonstrates that at both jobs the work was similar with respect to those aspects of the jobs that caused the occupational disease. Brown's point is denied.

For the reasons stated, we find that the commission did not err in imposing liability on Brown pursuant to § 287.067.7.

The award of the Commission is affirmed.

CROW, P.J., and PARRISH, J., concur.