Jackline D. BISSELL, Appellant,

v.

**PARAMOUNT CAP MANUFACTURING CO. and Paramount Headwear, Inc.,** Respondents.

No. 21766.

Missouri Court of Appeals, Southern District, Division One.

Jan. 9, 1998.

Matthew J. Padberg, Padberg, McSweeney, Slater & Merz, St. Louis, for Appellant.

W.J. Glaser, Kortenhof & Ely, P.C., St. Louis, for Respondents.

CROW, Judge.

The Labor and Industrial Relations Commission ("Commission") denied a claim by Jackline D. Bissell ("Claimant") against Paramount Headwear, Inc. for compensation under The Workers' Compensation Law, chapter 287, RSMo 1994, as amended.

Claimant appeals. The first of her two points relied on is:

"The ... Commission erred in affirming the award of Judge Wilson[1] in that the Commission failed to correctly interpret and apply Sections 287.067 and 287.063 because the Commission failed to consider whether or not Claimant's employment at Paramount Headware [sic], Inc., was a substantial contributing factor to the Claimant's carpal tunnel syndrome."

Section 287.063, RSMo 1994, referred to in the above-quoted point, reads, in pertinent part:

"1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation ... in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

. . . ."

Only one provision of § 287.067, RSMo 1994, the other statute referred to in the above-quoted point, is pertinent to this appeal. That provision is subsection 7, the subsection referred to in § 287.063.1 (above). Subsection 7 of § 287.067 reads:

"With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease."

The ALJ's award (denying the claim) was entered after an evidentiary hearing. The award contains extensive and meticulous findings of fact and conclusions of law. Commission unanimously adopted the ALJ's award.

In setting forth the facts germane to Claimant's first point, we make liberal use of facts found by the ALJ which neither party challenges.

Claimant was hired by Paramount Cap Manufacturing Co.[2] in August 1991. Her job was to "push and pull" baseball caps onto hoops so a machine could embroider "logos and emblems and names on them." The ALJ found this activity "involved repetitive and manual use of [Claimant's] right hand."

According to Claimant, within a year after commencing employment at Paramount, she began experiencing pain, swelling and numb-

---

1. An associate administrative law judge of the Division of Workers' Compensation. In this opinion, we refer to him as the "ALJ."

2. The relationship between Paramount Cap Manufacturing Co. and Paramount Headwear, Inc. is not precisely revealed by the record. At the outset of the hearing, the ALJ announced that the employer is "Paramount Cap Manufacturing Company, a self-insured corporation." The report of injury identified Claimant's employer as "Paramount Cap Mfg. Co.," and identified the insurer as "Paramount Headwear, Inc. Self-Insured C/O." Respondents' brief refers to Claimant's employer simply as "Paramount." For convenience, so shall we.

ness in her right hand and wrist. She first saw a physician, Charles C. Mauldin, M.D., June 3, 1992. He determined there was "no clear evidence of carpal tunnel syndrome."

Claimant returned to Mauldin five times during the ensuing five months. On her final visit, November 11, 1992, Mauldin concluded:

"Perhaps there is an element of mild carpal instability not visible on x-ray. No other etiology for her hand pain has been found.

... I do not feel that she will require any further medical care. Her wrist pain may wax and wane, depending on force that's placed on it. I do not feel that her work environment will accelerate this condition over and above that which may normally occur."

Mauldin determined "[n]o further follow up" was necessary. Claimant thereafter continued to perform the same work at Paramount. Asked the condition of her hand, Claimant responded: "It was still the same ... it was mild." Claimant missed no work during the next 14 months and sought no further treatment.

On January 18, 1994, while Claimant was putting caps on the machine, the "top" of her right wrist and her right hand struck the machine. The impact caused pain and tingling. Claimant reported the incident to her supervisor.

On February 14, 1994, Claimant went to Joseph Bruce, M.D., for treatment. He concluded Claimant was suffering from carpal tunnel syndrome. He referred Claimant to Marvin M. Mishkin, M.D., an orthopedic surgeon.

Mishkin saw Claimant the following day (February 15, 1994). After examining her, his diagnosis was: "Tendinitis right wrist, diffuse, associated with overuse." Mishkin found "no clinical evidence or subjective complaints that correlate with a carpal tunnel syndrome." He recommended that Paramount assign Claimant "light duty."

Paramount "fired" Claimant February 28, 1994.

Claimant saw Mishkin the following day (March 1, 1994), and again on March 9, 1994.

On the latter date, Mishkin again found "no carpal tunnel syndrome."

Claimant saw Mishkin again March 22, 1994. On that occasion, Claimant informed Mishkin she had obtained employment in the delicatessen at "Nu–Way Foods." Her job there was to slice bread and meat and make sandwiches. Claimant recounted that when she used a "slicer," her right hand and arm "really hurt." Mishkin adhered to his diagnosis of "Tendinitis, right wrist."

Claimant saw Mishkin again April 19, 1994. According to Mishkin, Claimant had no complaint of pain, numbness or soreness involving her right wrist, hand or forearm. His diagnosis that date was: "Tendinitis, right wrist resolved."

Claimant commenced this proceeding by filing a claim for compensation against Paramount (but not Nu–Way) on June 10, 1994. The claim averred Claimant sustained an injury to her right wrist and right hand in January 1994 while she "was inserting a hat into an embroidering machine."

On July 11, 1994, upon the recommendation of Dr. Bruce (mentioned earlier), Claimant saw Hugh G. Harris, M.D., an orthopedic surgeon and hand surgeon. Claimant informed Harris about the "repetitive manual activities" in her job at Paramount and described the incident of January 18, 1994, when she struck her right hand and wrist on the machine.

After administering a number of tests, Harris made a diagnosis of "right carpal tunnel syndrome and a right de Quervain's syndrome." Asked to describe those maladies, Harris responded:

"Carpal tunnel syndrome is a compression of the median nerve at the carpal or wrist area as it leads into the hand .... de Quervain's [disease] is a tendonitis or inflammation of the tendons ... very close to the wrist level ... at the base of the thumb side of the wrist."

Harris treated Claimant by administering an injection to the wrist, prescribing anti-inflammatory medication and recommending "nighttime wrist splinting."

Claimant testified the injection[3] administered by Harris "really did help." However, the relief was not permanent.

Claimant saw Mishkin August 16, 1994, complaining of pain in the right wrist, hand and forearm, and tingling in her fingers. She was still employed at Nu–Way, but informed Mishkin she had been transferred to the meat department, where she wraps meat and stacks meat in the display cases or freezer. Mishkin quoted Claimant as saying her pain "began to come back slowly." Mishkin again found no "objective evidence in support of the diagnosis of carpal tunnel syndrome or peripheral nerve entrapment."

Claimant returned to Harris in November 1994. According to Harris, Claimant "described a very significant relief of symptoms." There was no numbness and tingling in her hand, but she did complain that her wrist felt "like it was sprained."

After administering some tests, Harris's diagnosis—right carpal tunnel syndrome and right de Quervain's syndrome—remained unchanged.

Claimant went back to Mishkin in January 1995 complaining of pain in the right hand and wrist, and numbness in the hand and fingers. She was still working in the meat department at Nu–Way. Asked if he formed an opinion on that occasion as to whether Claimant was suffering from carpal tunnel syndrome, Mishkin testified: "I could not make a definite diagnosis of carpal tunnel syndrome or median nerve compression." Mishkin added: "I could not relate her current symptoms to any specific incident which occurred in the course of her occupational duties at Paramount ... or specifically to an incident of January 18th, 1994."

On March 31, 1995, Claimant returned to Harris. According to Harris, Claimant was "having recurrent symptoms of a fairly significant and typical carpal tunnel." Harris's diagnosis remained unchanged. At that point, explained Harris, "I felt that she had had optimal conservative treatment and was probably a candidate for surgical release of the carpal tunnel on the right side."

Cross-examination of Harris indicated he was unaware Claimant had ceased working at Paramount 13 months earlier and had been working at Nu–Way about a year.

On July 10, 1995, 13 months after filing her original claim, Claimant filed an amended claim. Like the original claim, the amended claim sought compensation from Paramount alone. The amended claim averred Claimant was suffering from carpal tunnel syndrome caused by "[c]umulative repetitive trauma, including, but not limited to, trauma incurred in January of 1994."

At the time of the ALJ's hearing (April 4, 1996), Claimant was still working at Nu–Way. She described the condition of her right arm and hand as swollen and discolored.

The ALJ's findings (adopted by Commission) included these:

"I find the testimony of Dr. Harris to be more credible and persuasive than the testimony of Dr. Mishkin, and resolve the discrepancy in the diagnosis of [Claimant's] medical condition in favor of the testimony offered by Dr. Harris. Accordingly, I am persuaded that, as a consequence of the repetitive nature of [Claimant's] work at Paramount ... together with the aggravation of injury associated with the hitting of her hand ... on January 18, 1994, [Claimant] sustained an injury in the nature of right carpal tunnel syndrome and right de Quervain's syndrome.

. . . .

However, in November 1994, following treatment with Dr. Harris, [Claimant] achieved 'very significant relief of symptoms' with apparent successful resolution. Unfortunately, approximately four to five months later, the symptoms reappeared, resulting in a recommendation on March 31, 1995, that [Claimant] undergo a surgical release for her right carpal tunnel syndrome. The four to five month period of symptom-free employment at Nu–Way Foods, followed by a recurrence of symptoms while working for Nu–Way Foods, raises suspicion that [Claimant's] employ-

---

3. A "cortisone shot," according to Claimant.

ment at Nu–Way Foods caused an injurious exposure resulting in her present need for medical treatment."

The ALJ found Harris apparently did not know when Claimant's employment at Paramount ended or that she was working at Nu–Way throughout the time he was treating her. The ALJ (and Commission) concluded:

"[Claimant's] employment with Nu–Way Foods continued to expose her to the hazards or conditions which would tend to aggravate or cause the condition of carpal tunnel syndrome. The Claim for Compensation was filed while [Claimant] was working for Nu–Way Foods; and she did not miss any time from work while working for Paramount.... Additionally, I do not find Section 287.067.7 ... to be applicable to the present case, insofar as [Claimant's] employment with Nu–Way Foods exceeds the applicable three month period."

As we comprehend Commission's decision, Commission found: (a) Claimant has an occupational disease, carpal tunnel syndrome;[4] (b) that ailment is "the occupational disease for which claim is made" within the meaning of § 287.063.2, quoted earlier; (c) the hazard that causes carpal tunnel syndrome is repetitive motion; (d) Claimant was exposed to that hazard at Paramount; (e) Claimant was thereafter exposed to that hazard at Nu–Way; (f) inasmuch as Nu–Way was the last employer to expose Claimant to such hazard, § 287.063.1 and .2 shield Paramount from liability unless subsection 7 of § 287.067, quoted earlier, is applicable; (g) subsection 7 applies only where the exposure to such hazard is for a period of less than three months; (h) Claimant was exposed to such hazard at Nu–Way for more than three months; (i) consequently, subsection 7 of § 287.067 does not apply. As subsection 7 does not apply and Nu–Way was the last employer to expose Claimant to the hazard that caused her carpal tunnel syndrome, Commission held § 287.063.1 and .2, described by Commission as a "rule of convenience," forbade Commis-

sion from granting Claimant compensation against Paramount.

The first case we must examine in addressing Claimant's first point is *Johnson v. Denton Construction Co.*, 911 S.W.2d 286 (Mo. banc 1995). There, an employee worked for a construction company ("the first employer") from March 1, 1992, until late April 1992, when he was fired. *Id.* at 286–87. He filed a claim against the first employer May 4, 1992, seeking workers' compensation for carpal tunnel syndrome. *Id.* at 287. Soon thereafter, the worker began employment with another construction company ("the second employer"). *Id.* at 287–88. Commission awarded the worker benefits against the first employer (the only employer against whom the claim was made). *Id.* at 287. The first employer appealed, maintaining that because the worker was last exposed to the hazard of carpal tunnel syndrome while working for the second employer, the first employer was relieved of liability by § 287.063.2. *Id.*

The Supreme Court of Missouri found the contention meritless, emphasizing that in interpreting § 287.063, it is necessary to determine the occupational disease "for which claim is made." *Id.* at 288. Inasmuch as the worker's claim was clearly for the carpal tunnel syndrome he allegedly incurred while working for the first employer, that was the employer in whose employment the worker was last exposed to the hazard of the disease for which the claim was made. *Id.* at [1, 2].

*Johnson* is no help to Claimant in the instant case because, as reported earlier, Claimant's amended claim was filed some 16 months after she began working at Nu–Way. The allegation that Claimant was suffering from carpal tunnel syndrome was first made in the amended claim.[5] Commission found Claimant was exposed to the occupational hazard that caused her carpal tunnel syndrome while employed at both Paramount and Nu–Way.

During the interval between the ALJ's award and Commission's award in the instant

---

4. Carpal tunnel syndrome is a known occupational disease. *Weniger v. Pulitzer Publishing Co.*, 860 S.W.2d 359, 360[2] (Mo.App. E.D.1993).

5. The original claim, as we have seen, averred Claimant sustained an injury to her right wrist and right hand in January 1994 while she "was inserting a hat into an embroidering machine."

case, the Eastern District of the Court decided *Walker v. Klaric Masonry, Inc.*, 937 S.W.2d 219 (Mo.App. E.D.1996), a case cited by Claimant. In *Walker*, a worker developed a condition diagnosed as "lateral epicondylitis with extensor tendinitis" while working for a bricklaying company ("the first employer"). *Id.* at 219. He was off work awhile receiving physical therapy. *Id.* at 219–20. Upon returning to work after the therapy, he was laid off. *Id.* at 220. He thereupon found work with another employer, but left after a week and a half. *Id.* Thereafter, he found work with yet another employer ("the third employer"). *Id.* There, the symptoms became worse and the worker had surgery. *Id.* Upon returning to work with the third employer, the worker redeveloped pain and was diagnosed as suffering from "radial tunnel syndrome." *Id.* An expert avowed the latter condition began while the worker was employed by the first employer, but was masked by the lateral epicondylitis. *Id.*

The worker filed a claim for workers' compensation against the first employer and the third employer. *Id.* Commission held the third employer liable because the worker was last exposed to the hazard causing the disease while employed by the third employer. *Id.*

The appellate court affirmed, holding that subsection 7 of § 287.067 did not exonerate the third employer. *Id.* The court explained:

"If the exposure to the repetitive motion which causes the disease is less than three months and the evidence establishes 'that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.' "

*Id.* However, reasoned the court, subsection 7 of § 287.067 applies only in the narrowly limited circumstances described above, hence only in those restricted circumstances is Commission allowed to determine whether

the work for an earlier employer or the work for the last employer was the substantial contributing factor to the worker's affliction. *Id.* Because subsection 7 did not apply in *Walker*, § 287.063.1 and .2 assigned liability to the third (and last) employer. *Id.*

As we understand *Walker*, it holds subsection 7 of § 287.067 means that if (1) a worker is employed by two or more employers, performing work for each which exposes him to repetitive motion that causes an occupational disease, (2) the exposure to that hazard while employed by the last employer is for a period of less than three months, and (3) the exposure to the same hazard while employed by an employer prior to the last employer is the substantial contributing factor to the disease, the prior employer who so exposes the worker is liable. However, if the last employer, for a period of three months or more, exposes the worker to the repetitive motion that causes the occupational disease, subsection 7 of § 287.067 does not apply. Consequently, in *Walker* § 287.063.1 and .2 placed liability on the third (and last) employer.

Here, Claimant argues: (1) she was employed at Nu–Way for a period of less than three months before she filed her claim,[6] hence any exposure at Nu–Way to the repetitive motion that caused her carpal tunnel syndrome was less than three months, and (2) the ALJ found the repetitive motion at Paramount was a cause of Claimant's carpal tunnel syndrome, as was the incident at Paramount on January 18, 1994. Therefore, reasons Claimant, subsection 7 of § 287.067 required the ALJ (and Commission) to determine whether Claimant's "exposure" at Paramount was "the substantial contributing factor" to Claimant's carpal tunnel syndrome.

Claimant overlooks the fact that she first sought recovery for carpal tunnel syndrome in her amended claim which, as noted earlier, was filed July 10, 1995. By then, she had worked at Nu–Way some 16 months. Consequently, if her employment at Nu–Way exposed her to the repetitive motion that

---

**6.** The ALJ found Claimant began employment at Nu–Way after March 9, 1994, and before March 22, 1994. As reported earlier, she filed her original claim June 10, 1994. Claimant mistakenly argues she filed it "June 8, 1996." We infer Claimant meant June 8, 1994. The claim is dated June 8, 1994, but the record shows it was received by the Division of Workers' Compensation June 10, 1994.

caused her carpal tunnel syndrome, such exposure far exceeded the three-month limit in subsection 7 of § 287.067.

Therefore, in order for Claimant to recover from Paramount, the evidence had to show her employment at Nu–Way did not expose her to the repetitive motion that caused her carpal tunnel syndrome.

Claimant maintains there is "absolutely no evidence that the [Nu–Way] employment exposed the Claimant to repetitive motion disease." According to Claimant, her job at Nu–Way did not involve "continuously repetitive motion activities." Accordingly, says Claimant, there was no evidence to support the finding of the ALJ (and Commission) that her employment at Nu–Way continued to expose her to the hazards or conditions which would tend to aggravate or cause carpal tunnel syndrome.

■ Harris, the physician whom the ALJ (and Commission) found persuasive, testified that the work Claimant performed at Paramount "would be consistent with the cause of [her carpal tunnel syndrome]." However, Harris conceded that in November 1994, the "majority of her symptoms had resolved." Harris also acknowledged that cutting meat is "certainly an occupation that could cause carpal tunnel [syndrome]." Additionally, Harris testified that by March 31, 1995, Claimant's symptoms had returned to the extent that she was a candidate for surgery. He admitted he did not know what work she had been doing between November 1994 and March 1995. His testimony continued:

"Q. If she was involved in a job with repetitive activities of the hands, would that have aggravated her condition?

A. Yes. It could have.

Q. Could have aggravated it from a non-surgical candidate to a surgical candidate?

A. Yes."

Viewing Harris's testimony favorably to Commission's decision, *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo. App. W.D.1995), we hold such testimony sufficient to support Commission's finding that Claimant's employment at Nu–Way continued to expose her to hazards or conditions which would tend to aggravate or cause carpal tunnel syndrome. We further hold such finding is not against the overwhelming weight of the evidence. *Id.*

It follows that inasmuch as Claimant was exposed to those hazards or conditions at Nu–Way for some 16 months before she filed her amended claim seeking compensation for carpal tunnel syndrome, Commission correctly ruled that subsection 7 of § 287.067 did not apply. That being so, § 287.063.1 and .2 barred Commission from granting Claimant compensation against Paramount.

We do not ignore *Mayfield v. Brown Shoe Co.*, 941 S.W.2d 31 (Mo.App. S.D.1997), another case cited by Claimant. There, Commission utilized subsection 7 of § 287.067 in assigning liability for a worker's occupational disease to the first employer instead of the second employer. This court held Commission did not err in finding that the worker's exposure to repetitive motion while working for the first employer was the substantial contributing factor to the disease. *Id.* at 36[10].

*Mayfield* differs from the instant case in that the claim for compensation there alleged the disease occurred either in the final month of employment by the first employer or the first month of employment by the second employer. *Id.* at 33. In the instant case, as noted earlier, Claimant's allegation that she was suffering from carpal tunnel syndrome was first made in her amended claim, some 16 months after she began working at Nu–Way. Her original claim sought compensation for the alleged injury sustained in January 1994, not for carpal tunnel syndrome. The latter affliction is unmentioned in the original claim.

More importantly, however, the parties in *Mayfield* appear to have shared the notion that because the symptoms of the disease appeared within a week after the worker began employment with the second employer, *id.* at 33, subsection 7 of § 287.067 applied, thus liability of the first employer hinged on whether the worker's job with the first employer was the substantial contributing factor to the disease. *Id.* at 34–37. The opinion gives no indication that the first em-

ployer asserted subsection 7 of § 287.067 was inapplicable. Instead, the first employer's hypothesis of error was that the evidence was insufficient to support Commission's finding that the worker's duties while employed there constituted the substantial contributing factor to the disease. The opinion is devoted to an analysis of the evidence germane to that issue.

As the first employer in *Mayfield* did not assert subsection 7 of § 287.067 was inapplicable, but argued only that the evidence was insufficient to support a finding adverse to the first employer under that subsection, this court in *Mayfield* was not required to decide whether subsection 7 applied. Consequently, *Mayfield* is irrelevant to Claimant's first point. Claimant's first point is denied.

Her second point is:

"The . . . Commission erred in affirming the award of the [ALJ], in that the Commission failed to correctly determine that the Claimant's injury was caused by an accident as opposed to an occupational disease because the accepted and credible evidence indicated that the Claimant's condition was aggravated by striking her hand on a table[ [7] ]."

From the argument following the point, we glean Claimant's hypothesis is that although she had carpal tunnel syndrome when she first saw Mauldin on June 3, 1992—a hypothesis unsupported by Mauldin—she "apparently remained asymptomatic" from November 11, 1992 (her last visit to Mauldin), until January 18, 1994, when she struck the machine. That incident, according to Claimant, aggravated her "pre-existing carpal tunnel condition, and is thus compensable." Consequently, reasons Claimant:

"[My] injury should be viewed as one caused by an accident pursuant to Sections 287.120 and 287.020(2) . . . . [T]he event of January 18, 1994, is not one governed by Section 287.076, nor Section 287.063. Therefore, there is no determination as to whether there was a last exposure since it is a single event producing [my] disability."

The first flaw in Claimant's contention is that it is contrary to her amended claim.

There, as recounted earlier, she alleged her carpal tunnel syndrome was caused by *cumulative repetitive trauma*, including, but not limited to, trauma incurred in January 1994.

The second, and more significant, flaw in Claimant's contention is that the ALJ (and Commission) found the repetitive nature of Claimant's work at Paramount, coupled with the "aggravation" associated with the incident of January 18, 1994, caused Claimant's carpal tunnel syndrome, and that her employment at Nu–Way continued to expose her to hazards or conditions which would tend to aggravate or cause carpal tunnel syndrome. Earlier in this opinion, we held the evidence sufficient to support those findings. There was no evidence to support a finding that Claimant's carpal tunnel syndrome was caused solely by the incident of January 18, 1994, or that but for such incident Claimant would not be afflicted with carpal tunnel syndrome.

In that respect, the instant case differs from *Rector v. City of Springfield*, 820 S.W.2d 639 (Mo.App. S.D.1991), the sole case cited by Claimant in support of her second point. In *Rector*, there was medical evidence that the worker, who had a preexisting disability, sustained an additional work-related injury resulting in additional disability. *Id.* at 643. Here, no medical evidence attributed a portion of Claimant's hand and wrist problems to the incident of January 18, 1994, and another portion of those problems to repetitive motion. The thrust of all the medical evidence favorable to Claimant was that she suffers from one ailment, carpal tunnel syndrome, caused by repetitive motion plus the incident of January 18, 1994.

Claimant's second point is denied. Commission's award denying the claim is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

___

**7.** The argument following the point reveals the point is based on the incident at Paramount on January 18, 1994. As recounted earlier in this opinion, Claimant testified the "top" of her right wrist and her hand struck the *machine* on which she was working, not a *table*.