

# SUPREME COURT OF MISSOURI
## en banc

RONALD MALAM,

|  |  |  |
|---|---|---|
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. SC95170 |
| | ) | |
| STATE OF MISSOURI, | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

### APPEAL OF A DECISION OF THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

Ronald Malam appeals a Labor and Industrial Relations Commission (commission) decision denying his claim for workers' compensation benefits. The commission determined that Mr. Malam was involved in a workplace accident but concluded that he did not bear his burden of proving that the accident was the "prevailing factor" causing his medical condition or disability. The commission's decision is reversed, and the case is remanded.

### Facts

Mr. Malam was employed by the Missouri Department of Corrections (employer) as a corrections officer. While at work, Mr. Malam executed a "takedown" on an uncooperative inmate. Mr. Malam initially experienced only an adrenaline rush. As he escorted the inmate to his housing unit, Mr. Malam

became short of breath and began spitting up blood. Mr. Malam was taken by ambulance to the hospital where he experienced a "hypertensive crisis" and was unconscious for a week.

Mr. Malam's treating physicians were aware of the takedown but noted no external signs of injury on Mr. Malam except a bruised knee. Dr. Timothy Woods stated that it was "likely that trauma precipitated the medical processes [Mr. Malam] has going on." Dr. Douglas Ham stated that it was "unclear whether this was all related to a possible cardiac contusion tipping [Mr. Malam] into the congestive heart failure or whether he could have also had pulmonary contusion which worsened his respiratory and cardiac status or could have been secondary to the stress of the altercation." Ultimately, Mr. Malam underwent a heart catheterization, and the doctors diagnosed him with a hypertensive crisis.

Mr. Malam filed a claim for workers' compensation seeking reimbursement from employer in the amount of $138,010.15 for medical expenses. At a hearing before an administrative law judge (ALJ), the parties introduced expert medical opinions from two doctors. Dr. Anne-Marie Puricelli examined Mr. Malam on behalf of his employer. Dr. Puricelli concluded that the prevailing factors causing Mr. Malam's hypertensive crisis were his preexisting health problems. Mr. Malam's medical expert, Dr. Brent Koprivica, concluded that the takedown was "the direct, proximate and prevailing factor precipitating [Mr. Malam's] hypertensive crisis." The ALJ found that, "[b]ased on the opinion of

2

Dr. Puricelli," the takedown did not meet the prevailing factor requirement and that the hypertensive crisis was not related to any work event.

Mr. Malam appealed the ALJ decision to the commission. The commission determined that Mr. Malam suffered an accident but that Mr. Malam was not entitled to benefits because he had not proven that the accident was the prevailing factor causing his medical condition or disability. The commission found Dr. Puricelli "did not have the correct facts" and, therefore, disagreed with her conclusion that Mr. Malam's pre-existing health problems were the prevailing factors causing his hypertensive crisis. Specifically, the commission noted that Dr. Puricelli's opinion was based on the erroneous assumption that Mr. Malam had not fallen to the ground during the takedown and speculation that Mr. Malam had received inadequate medical care for his pre-existing hypertension.

The commission determined that Dr. Koprivica's opinion was insufficient to establish causation because he referred to the takedown as both a "precipitating" and a "prevailing factor" in Mr. Malam's hypertensive crisis. The commission agreed that "an accident may be both a precipitating and the prevailing factor causing a compensable injury" but concluded that "this does not appear to be Dr. Koprivica's opinion in this case." The commission concluded that even if Dr. Koprivica's opinion were credible, Mr. Malam failed to establish that the accident was the prevailing factor in his injury because "absent further explanation as to what Dr. Koprivica meant by choosing those specific words, we simply are

unable to conclude that Mr. Malam has proven the requisite degree of causation to satisfy the requirements of the statute."

Mr. Malam raises two points on appeal. First, he asserts that the commission erred in finding that he failed to meet his burden of proving that his accident was the prevailing factor causing his hypertensive crisis because Dr. Koprivica's testimony established that the takedown was the prevailing factor. Alternatively, Mr. Malam asserts that the commission erred by focusing on the hypertensive crisis as the sole injury while ignoring other injuries that, in turn, "caused the need to treat the hypertensive crisis."

## Standard of Review

A reviewing court may modify, reverse, remand for rehearing, or set aside a workers' compensation award upon a finding that: (1) the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the commission's factual findings do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495.1[1] "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

Questions of law are reviewed *de novo*. *Pierce v. BSC, Inc.*, 207 S.W.3d 619, 621 (Mo. banc 2006). This Court must defer to the commission's findings on

---

[1] All statutory references are to RSMo 2000 as updated through the 2010 Supplement.

4

issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). The determination of whether an accident is the "prevailing factor" causing a claimant's condition is an inherently factual one. *Maness v. City of De Soto*, 421 S.W.3d 532, 539 (Mo. App. 2014). Although the commission's decision is afforded substantial deference, this Court must still "examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 222-23.

## Analysis

To obtain workers' compensation benefits, Mr. Malam had to prove that he was involved in an "accident" that was the "prevailing factor" causing an injury that arose out of and in the course of employment. Section 287.020.2 provides:

> The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

Section 287.020.3(1) provides that "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." A "prevailing factor" is "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.*

5

The dispositive issue in this case is whether Mr. Malam proved by substantial and competent evidence that his workplace accident was the prevailing factor causing his subsequent hypertensive crisis. "Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause." *Gordon v. City of Ellisville*, 268 S.W.3d 454, 461 (Mo. App. 2008). Ascertaining whether Mr. Malam's workplace accident caused him to suffer a hypertensive crisis requires expert medical testimony. The dissenting opinion notes evidence of Mr. Malam's "complex" medical history, but the fact remains that the precise, dispositive issue of causation was resolved by the commission's assessment of the testimony of Dr. Puricelli and Dr. Koprivica. As noted, the commission disputed Dr. Puricelli's conclusion because it was based on inaccurate facts. By discarding Dr. Puricelli's testimony, the commission was left with Mr. Malam's expert, Dr. Koprivica. The commission found that Dr. Koprivica did not testify unequivocally that Mr. Malam's workplace accident was the prevailing factor because he testified that the accident was the "prevailing factor precipitating" the hypertensive crisis.

While "[t]his Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses," *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012), this is not a case in which the commission made a credibility determination as to competing medical experts. Instead, this case involves an overly technical

and parsed analysis of Dr. Koprivica's testimony that overlooks the plain meaning of what he said. As Missouri courts have recognized, "[T]he words a medical expert uses . . . are often important, not so much in and of themselves, but as a reflection of what impression such witness wishes to impart." *Mayfield v. Brown Shoe Co.*, 941 S.W.2d 31, 36 (Mo. App. 1997).

The commission determined that Mr. Malam failed to sustain his burden of proof because Dr. Koprivica's testimony was equivocal. Dr. Koprivica's testimony was not equivocal. At no point did Dr. Koprivica state that Mr. Malam's accident was merely a "precipitating factor" in relation to another "prevailing factor." Rather, Dr. Koprivica emphasized the role of Mr. Malam's accident while minimizing the role of his preexisting conditions: "Clearly, Mr. Malam had an underlying hypertensive cardiomyopathy identified as far back as 2005. Nevertheless, the prevailing factor[s] precipitating the specific event were the unexpected emotional and physical stresses associated with restraining the offender." Read in context, the plain meaning of Dr. Koprivica's testimony was that the accident was the prevailing factor causing or, in his words, "precipitating" Mr. Malam's hypertensive crisis. The commission's decision to

deny worker's compensation benefits to Mr. Malam is reversed, and the case is

remanded.

 

_____

Richard B. Teitelman, Judge

Breckenridge, C.J., Stith and Draper,
JJ., concur; Russell, J., dissents in
separate opinion filed; Fischer and
Wilson, JJ., concur in opinion of
Russell, J.



# SUPREME COURT OF MISSOURI
# en banc

RONALD MALAM, )
 )
        Appellant, )
 )
v. ) No. SC95170
 )
STATE OF MISSOURI, )
DEPARTMENT OF CORRECTIONS, )
 )
        Respondent. )

**DISSENTING OPINION**

I respectfully dissent. The majority opinion neglects to apply the correct standard of review in reaching its decision to reverse the Administrative Hearing Commission (commission). The correct standard of review is whether there was sufficient competent and substantial evidence to support the commission's finding that Ronald Malam failed to show his workplace accident was the "prevailing factor" that caused his medical condition. In light of the medical evidence offered here, the commission's decision should be affirmed.

## I. Standard of Review

On appeal, the reviewing court defers to the commission on factual findings, credibility determinations, and weight given to conflicting evidence. *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). If an award is supported by sufficient competent and substantial evidence upon the whole record and is not contrary to the overwhelming weight of the evidence, it must be upheld. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003).

## II. Analysis

A claimant's burden of proof to show eligibility for workers' compensation benefits has changed in recent years. Prior to 2005, a claimant needed to show only that work was "a substantial factor" in causing the complained-of injury. Section 287.020.3, RSMo 2000. The General Assembly, however, amended this statute in 2005 by placing a heightened burden on a claimant, requiring a showing that the accident was the "prevailing factor" in causing the individual's injury. Section 287.020.3.[1] To be the "prevailing factor," the accident must be "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.* An injury is "not compensable because work was a triggering or *precipitating* factor."[2] Section 287.020.2 (emphasis added). The commission's determination of whether a workplace accident is the "prevailing factor" in causing a claimant's medical condition is a factual one that is

---

[1] All statutory references are to RSMo Supp. 2010 unless otherwise indicated.
[2] This language was added to section 287.020.2 in 1993. RSMo Supp. 1993.

entitled to deference by reviewing courts. *Maness v. City of De Soto*, 421 S.W.3d 532, 539 (Mo. App. 2014).

Although the majority opinion correctly states these well-settled rules, it proceeds to analyze the commission's decision in this case without applying the appropriate standard of review. The majority opinion fails to find that the commission's award is not supported by sufficient competent and substantial evidence or that it is contrary to the overwhelming weight of the evidence. Instead, the majority opinion dismisses the commission's decision as an "overly technical and parsed analysis" of an expert's written opinion and concludes that "the plain meaning of Dr. Koprivica's testimony was that the accident was the 'prevailing' factor causing or, in his words, 'precipitating' Mr. Malam's hypertensive crisis." *Slip. op. 6-7.*

The correct inquiry here is whether the commission's award is supported by sufficient competent and substantial evidence. In light of Malam's medical history and the testimony from the various physicians, that question should be answered affirmatively.

Dr. Koprivica concluded in his written report that Malam's workplace accident was the "direct, proximate and prevailing factor *precipitating* his hypertensive crisis." (emphasis added). Dr. Koprivica stated elsewhere that "[c]learly, Mr. Malam had an underlying hypertensive cardiomyopathy identified as far back as 2005. Nevertheless, the prevailing factor *precipitating* the specific event" was the workplace accident. (emphasis added). These statements are problematic because section 287.020 has long

3

held that an injury is not compensable because a work accident was a *precipitating* factor. In addition, the "prevailing factor" standard has been the law since 2005.

Here, Dr. Koprivica provided expert testimony to establish medical causation. Because the commission concluded that Dr. Koprivica's testimony was equivocal with regard to whether the accident was the "prevailing factor" causing Malam's medical condition, it found that Malam failed to establish the requisite degree of medical causation. This finding is supported by sufficient competent and substantial evidence and is not contrary to the overwhelming weight of the evidence.

While a medical expert does not have to employ particular legal terms of art in rendering an opinion, *see Mayfield v. Brown Shoe Co.*, 941 S.W.2d 31, 36 (Mo. App. 1997), it appears that Dr. Koprivica has had extensive experience with the Missouri workers' compensation system for almost 20 years, and he was well aware of the statutory directive that "an injury is not compensable because work was a triggering or precipitating factor" and that a work accident must be the "prevailing factor" causing the injury. Section 287.020; *see, e.g.*, *Dierks v. Kraft Foods*, 471 S.W.3d 726, 732 (Mo. App. 2015) (Dr. Koprivica testified that an employee's workplace fall was the "prevailing factor" in causing permanent injury to her knee); *Watson-Spargo v. Treasurer of State, Custodian of Second Injury Fund*, 370 S.W.3d 292, 299 (Mo. App. 2012) (Dr. Koprivica stated that an employee's accident was the "prevailing factor" in causing her additional disability); *Tillotson v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 515 (Mo. App. 2011) (Dr. Koprivica concluded that an employee's workplace injury was the "prevailing factor" in causing her need for a knee replacement).

4

Further, Dr. Koprivica's experience as a medical expert in the area of workers' compensation is vast. He has given expert opinions in 33 published workers' compensation cases, according to a Westlaw search. His curriculum vitae indicates that he has spoken about the workers' compensation laws of this state. Because Dr. Koprivica is a frequent expert witness, the commission was familiar with his expertise in workers' compensation law and could expect his written medical opinion in this case to reflect that knowledge.

Additionally, Malam's medical history and testimony from treating physicians supported the commission's conclusion that Malam did not show that the accident was the "prevailing factor" in causing his hypertensive crisis. As Dr. Koprivica noted, Malam's medical history is "complex." Six years before his accident, Malam was hospitalized and diagnosed with congestive heart failure, hypertension, primary cardiomyopathy, pulmonary hypertension, left ventricular dysfunction, biventricular failure, and morbid obesity. He was hospitalized a second time for acute gallstone pancreatitis and at that time was diagnosed with diabetes. Malam was hospitalized once more the year preceding his accident with severe acute pancreatitis, acute renal failure, obesity, hypertension, and uncontrolled diabetes.

Reports from Dr. Timothy Woods, Dr. Douglas Ham, and Dr. Mark Anderson, the physicians who treated Malam after the accident, reflected that there was significant confusion among these physicians regarding the events of the accident. They all indicated in their reports that a person had fallen on Malam's chest, which was not the case. Because Malam was intubated, the physicians were not able to ask him what

5

actually occurred.  Nevertheless, none of the treating doctors found any sign of trauma to Malam's chest.  Dr. Woods observed that Malam's knee was abraded but "[n]o other external trauma [was] noted."  Dr. Woods concluded that "[i]t does not appear that the patient's disease process is related to trauma.  It is likely that trauma *precipitated* the medical processes he has going on."  (emphasis added).

Dr. Ham similarly reported that Malam had a small abrasion on one knee but that there was no bruising on his chest.  He concluded that Malam was "[a] 50-year-old male with significant congestive heart failure, pulmonary edema[:] [i]t is unclear whether this was all related to a possible cardiac contusion tipping him into the congestive heart failure or whether he could have also had a pulmonary contusion which worsened his respiratory and cardiac status or could have been secondary to the stress of the altercation."  Dr. Ham found no traumatic injuries on Malam.

Dr. Anderson conducted a CT scan of Malam's chest and reported no "rib fracture or evidence of pulmonary contusion."  Dr. Anderson stated that Malam suffered from hypertensive crisis, acute renal failure, and respiratory failure.

Prior to the accident, Malam suffered from hypertension, cardiomyopathy, and diabetes.  Upon Malam's discharge from the hospital after the accident, in addition to those pre-existing conditions, he also was diagnosed with methicillin-sensitive staphylococcus aureas (MSSA) bronchitis and hypertensive emergency.

In addition to Malam's medical history and the reports of treating physicians, the commission also had before it the reports of two consulting physicians who saw Malam after the accident and reviewed his medical records.  The opinions of Dr. Koprivica are

6

discussed above. Dr. Anne-Marie Puricelli concluded that Malam had a history of hypertensive crises with flash pulmonary edema that was cardiogenic in origin, congestive heart failure, and renal failure and that none of these conditions were related to the Malam's workplace accident. [3]

### III. Conclusion

Malam did not meet his burden of proof that the accident was the prevailing factor causing his medical conditions. It was undisputed that Malam suffered from serious pre-existing medical conditions prior to the accident, including hypertension, cardiomyopathy, and diabetes. The physicians who treated Malam after the accident found no signs of trauma to Malam's chest, and their reports demonstrate uncertainty about the underlying cause of Malam's hypertensive crisis. Dr. Puricelli concluded that Malam's workplace accident was unrelated to his medical conditions. Most importantly, Dr. Koprivica, who was an experienced expert witness, did not unequivocally state that Malam met that standard. Section 287.020. At the time of the hearing, the law in this area had been the same for almost a decade. Since 2005, section 287.020 has required a showing that the accident was the "prevailing factor" causing a claimant's medical condition. And even before that, in 1993, the legislature specifically prohibited compensation when a claimant could only show that work was a *precipitating* or

---

[3] The commission noted that both of the consulting experts based their opinions on certain facts that were not consistent with the record. Dr. Koprivica reported that Malam used "extreme exertion" in "wrestling" the other individual to the ground during the altercation, but Malam testified that the force he used was "minimal." The report of Dr. Puricelli indicated a belief that Malam remained standing during the entire altercation, which was not the case.

triggering factor.  As an experienced expert in workers' compensation cases,

Dr. Koprivica presumably knew this important distinction between the words

"prevailing" and "precipitating."  Consequently, Malam did not meet the required burden

of proof.

There was sufficient substantial and competent evidence in this record to support

the commission's finding that Malam did not show the requisite degree of medical

causation to award workers' compensation benefits.

I would affirm the commission's decision.

_____

Mary R. Russell, Judge